BOWEN, Appellee,

v.

THOMAS, Appellant.

[Cite as *Bowen v. Thomas* (1995), 102 Ohio App.3d 196.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9-94-58.

Decided March 28, 1995.

*Spohn, Spohn & Zeigler* and *S. Fredrick Zeigler,* for appellee.

*Wilson & Kochheiser Co., L.P.A.,* and *Robert E. Wilson,* for appellant.

Evans, Judge.

This is an appeal by the defendant, Daniel E. Thomas ("appellant"), from a judgment of the Court of Common Pleas of Marion County granting the plaintiff's request for divorce and determining the parties' parental rights and responsibilities. Appellant challenges as error the court's order of spousal support and child support, the court's denial of his motion for shared parenting, and the court's refusal to change the surname of the parties' children to Thomas.

Daniel Thomas and Linda M. Bowen ("appellee") were married in Las Vegas on April 25, 1992, following approximately a two or three-month relationship. Appellee had just learned that she was pregnant with twins. Two days after their wedding, the parties returned to Marion, Ohio, where each of them owned a house. Although they had planned to live together in appellee's house, appellee refused to allow appellant to move into her home.

Appellee filed her complaint for divorce on August 5, 1992, requesting a divorce, spousal support, and an equal division of marital property. Appellee also stated in the complaint that she was pregnant with twins. Appellant filed his answer on August 13, 1992, admitting that the parties were incompatible, and denying that he was the father of the twins [1] (who were subsequently born on November 24, 1992).

Following three hearings on the parties' motions and complaints, the referee issued his report and recommendations. The trial court, with a few modifications, affirmed the referee's report, finding that the parties were entitled to a divorce on the ground of incompatibility, that there was no marital property to divide, that appellee was to be the residential parent and legal custodian of the children, and that appellee was unable to seek work while breast-feeding the twins. Accordingly, the court ordered appellant to pay child support in the amount of $604 per month, and to pay spousal support in the amount of $285 per month for six years, to help appellee meet her expenses until the twins started school. The court ordered the parties to comply with the court's standard parental visitation schedule, and further ordered appellee to stop breast feeding the children, if necessary, in order to comply with the visitation order. Appellant appealed the court's final judgment, asserting five assignments of error.

I

"The trial court erred in failing to consider the shared parenting plan filed by the Appellant pursuant to Ohio Revised Code 3109.04(G) which was filed at least 30 days prior to Appellant's case in Chief."

---

1. Appellant has since acknowledged paternity of the children, following receipt of the results of genetic testing.

This assignment of error is not supported by the record. A review of the record reveals that the court did consider appellant's request for shared parenting, but determined that it would not be in the best interest of the children. Moreover, the trial court also found that the parties herein were unable to cooperate or agree on anything, much less how to rear their children. The referee's report, which was adopted by the trial court in its judgment entry, recommended as follows:

"[S]hared parenting is not in the best interest of these children. The parties['] inability to cooperate with respect to the children make[s] a plan for shared parenting unworkable, at least at the present time. Also, the children have not been completely weaned from breast-feeding. The undersigned referee finds that it would be in the best interests of the children that Plaintiff be designated as residential parent and legal custodian."

Finding appellant's argument without merit, we overrule the assignment of error.

## II

"The trial court erred when it failed to follow the statutory outline for spousal support required by Ohio Revised Code 3105.18."

■ Appellant complains that the trial court abused its discretion in ordering him to pay appellee spousal support for a period of six years, in light of the facts of this case. Following a review of the record, we must agree with appellant's contention.

The referee asserted that his recommendation of six years' spousal support was based upon a "careful consideration of the evidence and the factors listed in R.C. 3105.18(C)." However, it was also clearly stated that the only real basis for spousal support was R.C. 3105.18(C)(1)(f), which provides that the court must consider "the extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home." None of the other statutory factors apply to this case, considering that these parties never established a marital home and therefore had no marital "standard of living." Furthermore, appellee will suffer no unusual hardship in seeking employment once the children are weaned, which would certainly occur long before the children are six years old. Therefore, although spousal support may be appropriate for some period of time, we find that an award of spousal support for six years is unreasonable. Although rearing twins is certainly a demanding task, at some point it would not be inappropriate for appellee, who was self-supporting prior to her marriage, to seek employment so that she may

contribute to her own and her children's support. Therefore, the second assignment of error is sustained.

## III

"The trial court erred in failing to provide frequent and continuous contact between Appellant and his children in accordance with Ohio Revised Code 3109.051(A), (D)."

This assignment of error is not well taken. Appellant argues that the court failed to consider the statutory factors relevant to parental visitation when ordering visitation pursuant to the Marion County guidelines for noncustodial parent visitation. The court's guidelines provide for appellant to visit with his children at least every other weekend, holidays, and extended summer vacations when the children reach an appropriate age. The record reflects that the court made this determination after consideration of all the relevant statutory factors. The assignment of error is overruled.

## IV

"The trial court erred in basing 1994 Child support on 1992 income and further failing to include all deductions as required by Ohio Revised Code 3113.215."

Appellant's fourth assignment of error is well taken, in part, in that the trial court erred in calculating child support in this case. As to appellant's contention that the court should have considered child support appellant allegedly pays on behalf of another child, we find that the record does not support such a deduction. Appellant submitted no evidence in support of his claim that he pays child support to another woman. R.C. 3113.215(B)(5)(b) (the court may only consider such payments made "under a child support order, * * * provided that payment * * * is verified by supporting documentation").

The trial court stated that it based its child support calculation solely on appellant's 1992 personal income tax returns (which we do not find in the record), and on testimony elicited at trial. The referee's report provides as follows:

"In order to compute the Defendant's child support obligation, the undersigned Referee relied upon his 1992 federal income tax return, the latest return which was available. The Defendant is employed by Thomas Vending, Inc. He is the sole shareholder and chief executive officer. He testified that he draws a weekly salary of $300 which is inconsistent with line 7 of his federal tax return. It indicates annual wages of $8,920. In order to compute the child support obligation, the undersigned Referee used the Defendant's total income of $24,519 from line 23. This amount is included on line 1A of the attached computation work sheet. The Defendant testified that he is provided the use of a company

vehicle for his personal use. There was no evidence regarding the cost of same. Therefore, the imputed value of the company vehicle should be $1,200 per year and is included on line 5 of the work sheet. See R.C. 3113.215(A)(3). Also included on line 5 of the work sheet is $1,200 which the Defendant's [c]orporation contributes to the Defendant's mutual fund. See R.C. 3113.215(A)(3). Also included on line 5 of the work sheet is $267 taken for depreciation. See R.C. 3113.215(A)(4)."

■ The referee's report as to child support, adopted for the most part by the trial court in its judgment, is not supported by the record. There is simply not enough evidence on the record to support any award that the court might make which would be in the best interest of the children. *A court may not simply find that "there was no evidence" upon which to determine a party's income and then arbitrarily assign its own figures in determining child support.*

■ As stated by the referee, appellant is the sole shareholder and chief executive officer of his own closely held corporation. As such, he has unlimited control over the distribution of the corporation's income and assets for tax and reporting purposes. The trial court's use of only a federal tax return and the appellant's own limited admissions to determine child support was an abuse of discretion. When determining the personal income, for child support purposes, of "a parent who is the only stockholder and who has control of all income and disbursements of a corporation," a court must consider all the parent's corporate and personal records in order to clarify the parent's actual personal financial benefit from the corporation. *Sizemore v. Sizemore* (1991), 77 Ohio App.3d 733, 739, 603 N.E.2d 1032, 1035. Such consideration should include a comprehensive review of corporate documents and records, particularly in cases where a sole shareholder obscures his personal worth through "creative" corporate accounting. R.C. 3113.215(B)(5)(a) requires a party to provide such records to the trial court for the court's consideration in determining and ordering child support.[2] See *Sizemore*, 77 Ohio App.3d at 739, 603 N.E.2d at 1036 ("possibility of parent's withdrawal of personal benefits from closely held corporation for living expenses or other personal use requires sharp scrutiny of all available records to prevent avoidance of child support"). Thus, when a party fails to respond to a discovery request for information concerning his financial situation and his income, in an action involving the determination of child support, it is the duty of the trial court to use the full power of the court to obtain complete information concerning the

---

**2.** R.C. 3113.215(B)(5)(a) provides:

"The parents shall verify current and past income and personal earnings with suitable documents, including, but not limited to, pay stubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns."

income and financial affairs of that party. Such action is necessary in order to provide support which is in the children's best interest, and which reflects a standard of living for the children which they would have enjoyed if their parents were married and cohabiting.

In this case, appellee obtained a subpoena *duces tecum* against appellant, which he ignored. Appellee, further, filed a formal request to the court for an order to compel appellant to produce the requisite corporate documents. It is clear from the record that the court never responded to appellee's motions, and that neither appellee nor the trial court ever received the requested documents from appellant regarding his income. Although appellee repeatedly requested that appellant produce his corporate records and tax returns and his personal tax returns, such documents were never produced by appellant. The only documents ever turned over to appellee's attorney or the court were a purported copy of appellant's 1991 corporate income tax return, undated and containing no signatures, and missing one or more relevant schedules, and his 1989 to 1991 individual tax returns. Appellant claimed gross personal income of $8,320 for the 1991 tax year. Thus, appellant persisted in his refusal to produce his records despite the issuance and delivery of a subpoena *duces tecum* and appellee's filing of a request for production of documents, to which the court never responded.

■ Accordingly, we hold that, when a party has taken every legally permissible action to ensure that the court has before it the records and documentation required to make a determination of child support, and the other party refuses to comply with orders and discovery requests, it is the duty of the trial court to ensure that the reluctant party complies with the law. See *In re Dissolution of Marriage of Al–Faour* (1990), 68 Ohio App.3d 279, 588 N.E.2d 228. Orders of the court to produce documents are not to be ignored by an obstinate party, and the court is required to utilize its authority to find such party in contempt of court. The court should compel compliance with its orders in child support cases, even to the extent of appointing an independent expert, as an *amicus* to the court, to assess financial documents and advise the court as to the party's true financial resources available for child support. Costs of appointing such an expert should be taxed against the defiant party. As stated by the court in *Sizemore,* 77 Ohio App.3d at 740, 603 N.E.2d at 1036, "[t]he availability of actual or potential resources for the living expenses of the children is the primary concern of the judiciary." Therefore, the fourth assignment of error is sustained in part, for the reasons set forth above.

## V

"The trial court erred when it failed to conduct a hearing on the issue of the last name of the party's [*sic*] children."

Appellant complains that, although he was named as father on the children's birth certificate, appellee gave the children her surname, *i.e.*, Bowen. Appellant asserts that, since he has been adjudged to be the children's father, the court should have held a hearing on his request to change the children's surname to Thomas. We disagree. First of all, our review of the record reveals that appellant never specifically requested the court to change the children's name from Bowen to Thomas until he objected to the referee's report in which the referee referred to the children as Bowen. Moreover, we find that the applicable law supports the trial court's decision to overrule appellant's objection.

■ Under R.C. 3705.09(F), a mother who was married at the time of a child's birth is permitted to register the child with any surname the mother designates. Thus, we conclude that the domestic relations court is without jurisdiction to order a change in the children's name pursuant to R.C. 2717.01, which vests jurisdiction in the probate court to change a child's name, only upon a finding that such change is in the child's best interest. See *In re Newcomb* (1984), 15 Ohio App.3d 107, 110–111, 15 OBR 198, 201–202, 472 N.E.2d 1142, 1145; accord, *Bobo v. Jewell* (1988), 38 Ohio St.3d 330, 528 N.E.2d 180.[3] The fifth assignment of error is overruled.

Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court as to spousal support and child support. The rest of the judgment is affirmed. The cause is remanded to the trial court for a determination on the support issues, following the submission to the trial court of the necessary evidence, upon which the trial court must base its judgment in accordance with the foregoing opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

HADLEY and SHAW, JJ., concur.

---

**3.** The Supreme Court in *Bobo v. Jewell* (1988), 38 Ohio St.3d 330, 333, 528 N.E.2d 180, 184, stated that its opinion was "confined to the narrow question of changing an illegitimate child's surname after parentage has been established" in the juvenile court. The court did state, however, that when the child's mother has been the sole custodial parent, and no evidence in the record supports the conclusion that a name change is in the child's best interest, the child's name should remain as designated on the birth certificate.