DECISION.
I. Current Child-Support Obligation
Sandra and Randall Trenkamp were married and had three children. (We refer to the parties and Randall's current wife, Dawn Trenkamp, by their first names because they all share the same surname.) In 1989, Sandra filed for divorce and Randall counterclaimed for the same. Sandra and Randall had previously entered into a settlement agreement that provided that Randall would pay monthly combined spousal and child support of $500 for an eighteen-month period. According to the agreement, after eighteen months, his obligation to provide spousal support would terminate, and his child-support obligation would decrease to $324 a month.
In 1990, Sandra moved to increase the child-support obligation. After a hearing that both parties and their respective counsel attended, the referee (whose position is now referred to as magistrate) recommended that the child-support obligation be increased to $183.30 per month, per child. The parties filed no objections. The trial court approved the referee's recommendation and entered a support-deduction order for $560.90 a month. In December of 1990, the trial court entered a divorce decree that specifically stated that Randall was to pay $183.30 per month, per child. The decree also stated that the parties' attached separation agreement, which contained the previously agreed-to amount of child support, had been made a part of the decree "as if fully rewritten herein." Randall's contributions to his and Sandra's children have been sporadic at best.
 II. Motion to Modify Child Support
Randall moved to Utah and married Dawn Trenkamp in 1991. In 1994, he adopted her two children, whom he had been supporting. The couple had four other children as well, the first child being born in 1992. In 1999, Randall moved to reduce his child-support obligation to Sandra, to retroactively modify his child-support arrearage of approximately $38,000, and to modify visitation. Randall subsequently voluntarily dismissed the visitation motion. In his memorandum supporting his motion for modification, Randall claimed that the reduction was justified because of his six other children and a change in income. Randall also claimed that he had sought modification earlier through the Utah authorities, but had received no assistance.
Although the memorandum in support of his motion claimed to have attached six worksheets for the period from May of 1992 through May of 1999, in the record before this court, there are no attachments. Apparently, the affidavits were erroneously attached to a document that the docket indicates was filed on January 9, 1989. The hearing before the trial court on Randall's objections fails to indicate whether the trial court had the worksheets for its consideration. (The magistrate apparently did review the worksheets, but stated in the findings of fact and conclusions of law that the affidavits at the end of the worksheets were unsigned.) The record contains one affidavit of income, signed by Randall on June 18, 1999.
While Randall's motion was pending, he was arrested under extradition, brought to Ohio, and pleaded guilty to three counts of first-degree-misdemeanor nonsupport. He was convicted and sentenced to six months' incarceration on each count, with a suspended sentence on two of the counts, and he was given three years' probation.
 A. Evidence at Hearing Before the Magistrate
At the modification hearing, Randall testified that he lived in Toquerville, Utah, with Dawn and their six children. According to his testimony, Randall had been employed full-time at a distribution center since March of 1999, earning close to $20,000 a year. (The affidavit of income estimated his gross yearly income at $15,000.) Randall was also enrolled at Dixie College, where he hoped to obtain an associate's degree in order to pursue a pharmaceutical position.
From approximately January to March of 1999, Randall had worked at a grocery store. He could not recall his salary. Through all of 1998 and part of 1997, he had been employed by an engine exchange company, earning a flat hourly rate of $21. From mid-1996 through mid-1997, he worked at Quality Ford for $20 an hour. Randall testified that he left that employer because the company was cutting back hours and he could not afford the eighty-five-mile commute. Before that, Randall worked at Steven Wade Honda Mazda in St. George, Utah, where he was paid $18.75 an hour. He left that position because Quality Ford paid more. Previously, in the early 1990s, he had worked "on and off" at Clegg's Machine Shop, where he made $14 an hour. He left that position because Steven Wade Honda Mazda offered a higher wage. In 1995, for six months, Randall worked at Auto Tech Plaza in Colorado. (A deduction order was received from his employer at that position.) He, once again, was unsure of his pay, but testified that the work was practically nonexistent and that his pay was so low that he could not afford to pay his rent. He testified that he left that employer because Dawn wanted to return to Utah.
David Kleinfelter, an auditor associated with the Hamilton County Child Support Enforcement Agency, testified that a notice of a right to seek modification of support was initiated only if a party requested it or the case was one in which public aid was involved. He found nothing in the file to indicate that notice of the right had been sent to Randall. Kleinfelter's audit indicated that Randall owed $39,633.70.
Sandra testified that she was employed by the Independence, Kentucky, police department, worked forty hours a week, and earned $10.34 an hour. That amount reflected an increase in pay she had received July 1, 1999. Sandra supplied a pay stub to verify her salary and projected that her yearly income would be $21,900. At the time the initial support order was entered, her income had been $7,000. The parties stipulated that the son Randall had with Sandra received $419.80 a month effective September 1999, due to a developmental disorder and/or attention deficit disorder.
 B. Magistrate's Decision
The magistrate decided that the current support order should not be modified and dismissed Randall's motion to retroactively modify the arrearage. Attached to the magistrate's findings of fact and conclusions of law were two child-support worksheets that the magistrate had completed. In the first, the magistrate determined that Randall's income was $19,448 and that Sandra's was $21,900. The magistrate made the required income adjustment of $16,200 for Randall's six other children. The magistrate also calculated that Randall had an adjusted gross income of $3,248, and that his child-support payment would be $28.11 per child, per month, or $86.03 per pay period. The magistrate determined that that amount of child support would be "totally unjust and inappropriate."
The magistrate then completed a worksheet in which he imputed Randall's income to be $40,000 and Dawn's income to be $10,720, which the magistrate imputed as additional income to Randall, and deducted $16,200 for the six children living with Randall. He also used as Sandra's gross income the figure of $21,900 and imputed to her as additional income the $4,930 provided by the government as a result of the son's disability, making her total annual gross income $26,830. Under this worksheet, Randall's total gross income was calculated to be $50,720, his adjusted annual gross income was $34,520, and his child-support obligation would be $214.43 per child, per month, or $656.14 per pay period. The magistrate determined that the second order was calculated to "approximate what the proper support order should be." Consequently, the magistrate used the second worksheet to bolster his factual determination that Randall should be paying more child support than he was currently obligated to pay. The magistrate then used that factual determination to bolster his conclusion that Randall's child-support obligation should not be reduced.
 C. Objections to the Magistrate's Decision
Randall objected to the magistrate's findings of fact and conclusions of law. He filed an affidavit dated October 20, 1999, to supplement his objections. The affidavit indicated that W2 forms, 1099 forms, Randall's most recent pay stub, and other "memoranda" for 1994 through 1998 were attached. But no such documents are attached to the affidavit in the record, nor is there an indication from the transcript of the hearing on the objections that any attachments were considered by the trial court. At the hearing on the objections, Randall's attorney referred to his 1999 tax form, but conceded that it was not in evidence. The trial court overruled the objections and ordered Randall to pay $10 per week on the arrearage. Thus, Randall's support obligation was maintained at $560.90 per month. With arrearage and processing fees, the monthly payment now stands at $605.10 a month.
 III. The Appeal
Randall appeals the trial court's order, raising two assignments of error. In his first assignment, he contends that the trial court erred by not modifying his child-support obligation because (1) the imputation of $40,000 as his gross income, along with the imputation to Dawn of $10,720, to be imputed to him as additional income, was against the weight of the evidence, and (2) the ignoring of his six other children was against the weight of the evidence and contrary to statute. In his second assignment, Randall argues that the trial court erred by granting Sandra's motion to dismiss his motion to modify the child-support arrearage, and by excluding evidence.
As explained by the Twelfth District Court of Appeals in Herman v.Herman,[1] "the judge may not merely rubberstamp the decision of the [magistrate] to whom a matter was referred." The court must provide an independent analysis, based on a review of the facts and findings supplied by the magistrate, before entering its judgment.[2] In this court's review, we must determine whether the trial court's actions in overruling objections and/or adopting the magistrate's decision amounted to an abuse of the court's discretion.[3]
 IV. First Assignment of Error-The Procedure and Calculations
Matters of child support are governed by R.C. 3113.215. The statute "is a comprehensive enactment governing the procedures for calculating and awarding child support.[4] Its purpose is "to protect and ensure the best interests of the children."[5] While the trial court has discretion in making decisions about child support, that discretion is constrained because "the terms of R.C. 3113.215 are mandatory and must be followed literally and technically in all respects."[6]
In cases involving the modification of a child-support order, the trial court's discretion is constrained by the mandates of R.C. 3113.215(B)(4). When confronted with a modification motion, the court is required, under the statute, to follow specific procedures. The movant must demonstrate a substantial change in circumstances. Once that change has been demonstrated, the court may make the modification in accordance with the statutory factors and guidelines. If the modification is based on a change in income, the court must use a child-support-computation worksheet to recalculate the modified support obligation in order to determine whether a substantial change in circumstances has occurred.[7]
If the new worksheet calculations change the previous order by ten percent, then the court must modify the child-support order.[8] This is because R.C. 3113.215(B)(4) provides that a "substantial change of circumstances" is demonstrated by a ten-percent deviation between the current child-support order and the Child Support Guidelines. The amount in the worksheet "is rebuttably presumed to be the correct amount of child support due."[9] The court must also consider in its recalculation, along with the existence of the ten-percent deviation, the cost of health-care insurance that the parent or parents have been ordered to obtain, and whether, if a modification is requested, the amount of support adequately meets the child's medical needs.[10]
After the court has determined the occurrence of a substantial change in circumstances, the court must next decide the appropriate amount of child support. This is determined in accordance with both the basic child-support schedule and the worksheets. The court may deviate from the worksheet amount only if it finds that the child-support amount in the new worksheet would be unjust, or inappropriate, and not in the best interest of the child or children.[11] To justify the deviation, the statute requires the court to journalize the "figure, determination, and findings" specified in R.C. 3113.215(B)(2)(c).[12] Thus, the trial court must include findings of fact to justify its conclusion that the amount of child support in the basic child-support schedule and worksheet is unjust, or inappropriate, and not in the child's best interest.
 A. The Magistrate's First Calculations
The magistrate prepared an initial worksheet calculating the amount of child support due under the Child Support Guidelines. The order sought to be modified required Randall to pay $183.30 per child, per month. The recalculated worksheet indicated that his obligation should be $28.11 per child, per month. This amount included the $2,700 tax exemption for each of his six children with Dawn. If the correctness of the $19,448 gross income attributed to Randall is assumed, the newly calculated child-support obligation was more than ten percent less than the prior child-support obligation. Thus, under R.C. 3313.215(B)(4), there was a change of circumstances sufficient to allow for modification.
Before continuing our analysis, we note a serious problem with this worksheet. There is no documentary evidence to verify Randall's past and current income as required by R.C. 3113.215(B)(5)(a). R.C.3113.215(B)(5)(a) provides that when a court computes the amount of child support required to be paid, "[t]he parents shall verify current and past income and personal earnings with suitable documents * * *." Although at least one appellate district has determined that credible testimony concerning income is sufficient to demonstrate a parent's income,[13]
several other courts, including this one, have concluded that R.C.3113.215(B)(5)(a) requires that documentation verifying current and past income be provided in order to determine the appropriateness of a modification in a child-support obligation.[14] Because the Ohio Supreme Court, in Marker v. Grimm,[15] held that "[t]he terms of R.C.3113.215 are mandatory in nature and must be followed literally and technically in all material respects," we are convinced that neither the magistrate nor the trial court can rely merely on testimony to determine income. Because there is no documentation to verify the initial figure of $19,448 that the magistrate assigned to Randall's income and used to calculate his child-support obligation, the trial court abused its discretion to the extent that it overruled Randall's objections based on its consideration of Randall's current income.
We assume for the purpose of continuing our analysis only that the worksheet was correctly calculated, and that assumption pertains to our examination of the decision to deviate from the calculation in that worksheet. To deviate from the child-support obligation calculated in the first worksheet, the magistrate had to find that the amount was unjust or inappropriate and not in the best interests of the children. The magistrate did make a finding that the amount was unjust or inappropriate. He failed, however, to make a finding that the amount was not in the best interests of the children. The failure to comply strictly with R.C. 3113.215(B)(4) foreclosed the magistrate from deviating from that amount. We continue our analysis, however, in order to provide guidance to the court below.
 D. The Second Worksheet-Imputed Income
The magistrate calculated a second worksheet to support his finding that the first worksheet was unfair or inappropriate. The magistrate decided that Randall was underemployed and imputed income to him. The magistrate used the amount of child support that would be owed based on the imputed income to show that because Randall should have really been paying more child support than he was, the current order should not be reduced.
To impute income, the "trial court must find that the parent is unemployed or under-employed. If the court so finds, then the trial court determines the amount of income to impute, based upon the factors in R.C. 3113.215(A)(5)(a), and the facts and circumstances of the case."[16] "The fact that the obligor's income has been reduced as a result of his or her voluntary choice does not necessarily demonstrate voluntary underemployment. The test is not only whether the change was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children."[17] Courts that have addressed this issue have held that the burden to prove voluntary underemployment is on the parent making the claim. Once that is established, the underemployed parent must show that he or she is earning up to or working at his or her potential.[18]
The magistrate's findings in this case indicated that, based on Randall's testimony, he had the capability of earning $40,000 a year. He also imputed as additional income to Randall $10,720, which had separately been imputed as potential income to Dawn. The magistrate found, however, that no evidence was presented as to Dawn's ability to contribute to the family's income or as to Randall's potential income. (The trial court interpreted this finding to mean that there was no "documentary" evidence of potential income supplied.) Regardless of those findings of no evidence, in the second new worksheet, the magistrate made the imputation of income.
The magistrate made the finding that Randall was underemployed based on Randall's testimony that he had previously earned up to $21 an hour as a mechanic and a technician. But it is difficult to accept the imputation of additional income when there is statutorily insufficient evidence to support a finding as to Randall's current income of $19,448. Further, we question the imputation of income where the magistrate found that there was no evidence of "potential income" as to Randall or Dawn. "A courtmay not simply find that `there was no evidence' upon which to determinea party's income and then arbitrarily assign its own figures indetermining child support."[19]
Further, the magistrate failed to relate his factual determination to the factors of R.C. 3113.215(A)(5)(a). While a voluntarily underemployed parent may have potential income imputed to him or her, such income must be determined from "the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides."[20]
While the magistrate looked at Randall's work history, that evidence alone did not allow income to be imputed. The record is not clear about where all of Randall's previous employment took place. He had previously worked in Provo, Utah, St. George, Utah, and Colorado Springs, Colorado. There is nothing in the record to indicate that these opportunities or similar opportunities exist near Toquerville, Utah, where he currently resided.
Thus, the record fails to provide any evidence regarding job opportunities or salary levels in Randall's field in the area in which he resided. R.C. 3113.215(A)(5)(a) sets out minimum findings that must be made as a matter of law. The trial court abused its discretion by accepting the imputation of income to Randall without considering the evidence related to the factors in R.C. 3113.215(A)(5)(a).[21]
The magistrate also imputed as additional income to Randall the hypothetical amount of $10,720 that he had separately imputed to Dawn. A current spouse's imputed income is not listed as income that can be imputed under R.C. 3113.215(A)(5)(a). While arguably a trial court may consider, when deviating from a child-support order, the benefits a parent receives from remarriage,[22] there was no evidence that Randall received any economic benefit from his marriage to Dawn, much less the $10,720 imputed by the magistrate. To impute as additional income this hypothetical amount was contrary to the statute.
The magistrate also erroneously imputed the disability benefits received by Sandra's son as additional income to Sandra. We are not persuaded that such benefits can be considered in determining a parent's support obligation[23]
Thus, because the magistrate failed to require documentation to verify Randall's income, failed to find that the amount he initially calculated was not in the best interests of the children before deviating from that amount, and wrongly imputed income to the parents when justifying the decision not to modify Randall's support obligation, the trial court's decision was unreasonable and, thus, an abuse of discretion. Therefore, we sustain Randall's first assignment.
 V. Second Assignment of Error-Retroactive Modification of Arrearage
In his second assignment, Randall argues that his arrearage should have been retroactively modified because of the unique circumstances of the case. Randall identifies the following to support his position: (1) the Utah Office of Recovery Services had failed to assist him in his request to that agency to reduce his child-support obligation; (2) he had received a letter from Sandra's attorney stating that he would attempt to have Randall arrested for nonsupport if he returned to Ohio; and (3) the settlement agreement contained a different amount of child support than the subsequently modified child-support order.
We find no merit in Randall's second assignment. Child-support payments that are delinquent are not subject to retroactive modification.[24] We recognize that some courts have carved out narrow exceptions to this rule.[25] But even were this court to determine that an exception to the rule were possible, the equities of this case do not call for retroactive modification of Randall's financial obligations to his children. Thus, we overrule Randall's second assignment.
 VI. Conclusion
We therefore affirm that part of the trial court's decision overruling Randall's objection to the magistrate's dismissal of his motion to modify the child-support arrearage. But we reverse the trial court's denial of Randall's objection to the magistrate's refusal to modify child support, and we remand this case for recalculation of the support obligation and a determination whether that obligation should be modified in accordance with R.C. 3113.215.
Hildebrandt, P.J., Gorman and Painter, JJ.
[1] Herman v. Herman (June 24, 1981), Warren App. No. 343, unreported.
[2] Id.
[3] See Frahlich v. Frahlich-Lerch (Aug. 23, 2000), Summit App. No. 19807, unreported.
[4] See Miller v. Miller (Sept. 17, 1999), Hamilton App. No. C-980892, unreported.
[5] See Rock v. Cabral (1993), 67 Ohio St.3d 108, 111, 616 N.E.2d 218,222.
[6] See Miller v. Miller, supra, quoting Pauley v. Pauley (1997),80 Ohio St.3d 386, 389, 686 N.E.2d 1108, 1111.
[7] See R.C. 3113.215(B)(4).
[8] See DePalmo v. DePalmo (1997), 78 Ohio St.3d 535, 679 N.E.2d 266, paragraph two of the syllabus.
[9] See R.C. 3113.215(B)(1).
[10] R.C. 3113.215(B)(4).
[11] See R.C. 3113.215(B)(4) and 3113.214(B)(1)(a).
[12] R.C. 3113.215(B)(4).
[13] See Higgins v. Danvers (Nov. 6, 1997), Cuyahoga App. No. 71352, unreported; Lieberman v. Lieberman (May 27, 1999), Cuyahoga App. No. 74181, unreported; Harris v. Whaley (May 12, 1994), Cuyahoga App. No. 65913, unreported.
[14] See Rientjes v. Rientjes (Jan. 18, 1995), Hamilton App. No. C-940787, unreported; Houts v. Houts (1995), 99 Ohio App.3d 701,6651 N.E.2d 1031; Greathouse v. Pozna (Apr. 29, 1998), Summit App. No. 18576, unreported; Aiello v. Aiello (Sept. 11, 1996), Seneca App. No. 13-96-12, unreported.
[15] Marker v. Grimm (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, paragraph two of the syllabus.
[16] See Smith v. Smith (Feb. 10, 2000), Franklin App. No. 99AP-453, unreported.
[17] Banard v. Kuppin (Sept. 10, 1999), Hamilton App. No. C-980360, unreported, citing Woloch v. Foster (1994), 98 Ohio App.3d 806,649 N.E.2d 918.
[18] See Smith v. Smith, supra.
[19] Bowen v. Thomas (1995), 102 Ohio App.3d 196, 201, 656 N.E.2d 1328,1331 (emphasis in the original).
[20] R.C. 3113.215(A)(5)(a).
[21] See Smith v. Smith, supra.
[22] See R.C. 3113.215(B)(3)(h).
[23] See Paton v. Paton (Mar. 16, 1999), Allen App. No. 1-98-74, unreported.
[24] McPherson v. McPherson (1950), 153 Ohio St. 82, 90 N.E.2d 675, syllabus; R.C. 3113.21(M)(3); Dunlap v. Dunlap (Mar. 27, 1996), Hamilton App. No. C-940033, unreported.
[25] See, e.g., Herman v. Herman, supra, and cases cited therein.