OPINION
This case is before us on the appeal of Brian Waters from a divorce decree filed in Clark County Common Pleas Court on May 5, 2000. In support of his appeal, Mr. Waters raises the following assignments of error:
 I. The trial court committed an abuse of discretion when it divided the proceeds of the house equally between the parties.
 II. The trial court committed an abuse of discretion when it awarded spousal support for a three year period.
 III. The trial court committed an abuse of discretion when it refused to grant a continuance, and the court's decision to proceed with the trial denied Brian [Appellant] due process of law.
In an amended brief, new counsel for Mr. Waters raises a fourth assignment of error, as follows:
 IV. The trial court committed an abuse of discretion when it failed to calculate in the child support order the mandatory factors of Brian's additional obligation of support for another child and for his expense of medical insurance payments made to cover his children with Defendant-Appellee, Michelle M. Waters ("Michelle").
After considering the assignments of error, we find them without merit and affirm the judgment of the trial court. A brief explanation of our decision follows.
 I
The first assignment of error concerns the marital residence. According to Mr. Waters, the trial court should have found the house to be his separate property. In the alternative, Mr. Waters feels the court should have considered an $1,850 down payment on the house as separate property. The basis for the first claim is that Mrs. Waters waived her dower interest in the property.
In divorce cases, we review property distribution for abuse of discretion. Specifically, a "reviewing court is limited to determining whether, considering the totality of the circumstances, the trial court abused its discretion in fashioning the award." James v. James (1995),101 Ohio App.3d 668, 680. Abuse of discretion means that "the court's attitude is unreasonable, arbitrary, or unconscionable." Id (citation omitted).
After reviewing the record, we find no evidence of such an attitude on the trial court's part. According to the testimony, the marital home was purchased during the marriage and mortgage payments were made thereafter with marital funds. Further, the undisputed evidence indicated that Mrs. Waters waived her dower rights at the request of the bank, when the mortgage loan was financed. At the time, Mrs. Waters had excellent credit, but had outstanding business loans. In contrast, Mr. Waters had poor credit and a stable income. Due to these facts, the bank asked Mrs. Waters to waive dower rights so that no business liens would be placed against the mortgaged property. Under the circumstances, the parties clearly intended the property to be a martial asset, and the trial court correctly awarded Mrs. Waters half the net equity after sale. See, e.g., R.C. 3105.171(H) (indicating that holding of title by a spouse individually does not determine whether property is separate property), and R.C. 3105.171(C)(1) (mandating a generally equal division of marital property).
Regarding the $1,850 down payment on the house, the testimony was not completely clear. Mr. Waters testified that this amount came both from his grandmother (deceased at the time of divorce hearing), and from Mr. Waters' savings account. However, Mr. Waters did not say how much money came from either source, nor did he indicate that the funds in his savings account were accumulated before marriage. There was also no evidence to indicate that the grandmother's share, given after the marriage, was anything other than a gift to both husband and wife. "The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence to trace the asset to separate property." Munroe v. Munroe (1997), 119 Ohio App.3d 530,536. Because Mr. Waters failed to meet the appropriate burden of proof on this issue, the trial court did not abuse its discretion in failing to award the down payment to Mr. Waters as separate property.
Based on the above discussion, the first assignment of error is overruled.
 II
In the second assignment of error, Mr. Waters contests the amount of spousal support which was awarded. In this regard, Mr. Waters believes the trial court erred not so much in the amount of the award, but in the duration. Specifically, the trial court awarded spousal support of $50 per week for three years. By way of contrast, Mrs. Waters asked the court during the divorce hearing to award her $300 per month for two years. Mr. Waters feels his ex-wife should be bound by the time period she requested. He also believes that three years of support for a nine year marriage is excessive. And finally, he points to Mrs. Waters' relative youth and the fact that she has chosen to be employed as a day care provider instead of finding work in the field in which she obtained a college degree (fashion merchandising).
Again, we review spousal support awards for abuse of discretion. Marcum v. Marcum (1996), 116 Ohio App.3d 606, 611. We find nothing unreasonable, arbitrary, or unconscionable about the award. The evidence indicated that Mrs. Waters was primarily a homemaker during the marriage and stayed at home with the couple's three children. At the time of the hearing, Mrs. Waters worked full-time taking care of children in her home, making about $11,302 per year. The parties' own children were ages 8, 7, and 5 at the time. According to Mrs. Waters, the only opportunity available in her field might be as a manager of a fashion department in Wal-Mart, for nominal pay and long hours. She testified that this would not be conducive to raising children. Mr. Waters did not put on any evidence contesting these facts. We see nothing unreasonable about Mrs. Waters' choices, given the relatively young ages of her children and the fact that she was a homemaker during the parties' marriage.
We also find nothing unreasonable about the duration of the award. Spousal support is not awarded, nor should it be limited, solely by reference to the number of years the parties have been married. An individual could be married for many years, yet need no support. By the same token, additional support might be warranted even in a marriage of relatively short duration, where young children are involved. We have previously stressed that "all persons, male or female, should strive to be as self-sufficient as possible, without unduly burdening others." Canfarelli v. Canfarelli (July 14, 2000), Montgomery App. No. 18145, unreported, p. 3. We do not think spousal support for a limited period of time conflicts with this goal, particularly in light of the young ages of the Waters' children.
We also note that the total amount of support ordered is only slightly different from the amount Mrs. Waters requested. Specifically, $50 per week for three years is $7,800, while $300 per month for two years is $7,200. Since the amounts are roughly equal, the duration of the support award is not a significant factor.
In view of the preceding discussion, the second assignment of error is overruled.
 III
The third assignment of error relates to the magistrate's refusal to grant Mr. Waters a continuance on the day of trial. Such decisions are "entrusted to the broad, sound discretion of the trial judge." State v. Unger (1981), 67 Ohio St.2d 65, paragraph three of the syllabus. Objective factors that trial courts may consider include:
 the length of the delay requested, whether other continuances have been allowed, any inconvenience to the litigants, the court and witnesses, whether the requested delay is legitimate rather than dilatory, purposeful or contrived, whether movant contributed to the circumstances underlying the request, and other relevant factors based on the unique aspects of each case.
State v. Aldridge (1997), 120 Ohio App.3d 122, 142, citing Unger,67 Ohio St.2d at 67-68.
After reviewing the record, we find no abuse of discretion. Mr. Waters filed the divorce action on August 18, 1998. Between that time and the hearing on April 14, 1999, Mr. Waters changed attorneys twice. The third attorney entered the case on February 3, 1999, which was the date originally scheduled for the divorce hearing. At that time, the attorney asked for the hearing to be continued so he could have time to prepare. This request was granted, and the hearing date was set for April 14, 1999, per agreement of the parties. Ironically, on March 13, 1999, Mrs. Waters moved for a continuance of the hearing date, because her attorney was going to be out of town. However, the trial court denied that motion on March 18, 1999. In the entry, the court commented that the date had been agreed to a month before, without objection. The court also relied on the fact that Mrs. Waters' counsel had given no explanation for the conflict.
Subsequently, Mrs. Waters appeared on the scheduled trial date, with her attorney and with witnesses. In comparison, Mr. Waters' attorney appeared and orally asked for a continuance. Notably, no formal motion had been filed at any time before the hearing started. At the hearing, the following exchange occurred:
 The Magistrate: . . . both parties are present with counsel. Plaintiff ready to proceed?
 Mr. Skogstrom: No, Your Honor. However, we can proceed if the Court directs us to.
The Magistrate: What do you mean, you're not ready at this time?
 Mr. Skogstrom: Well, frankly, Your Honor, I have not utilized the time since the last continuance in order to be prepared to present evidence and testimony on the issue of residential status.
 . . . We have some information that we can present should the Court direct us to go forward, but I'm not prepared, in my professional opinion, to adequately present Brian's case.
The magistrate then denied the request and the hearing went forward.
In a later written decision, the magistrate observed that the oral request for a continuance had been denied, in part, because counsel gave no legitimate reason for being unprepared nearly two and a half months after entering the case. In our opinion, the magistrate's decision was correct. The divorce case was not complicated, and a prior continuance had been granted for the specific purpose of allowing Mr. Waters' counsel to prepare. Instead of preparing, or offering a legitimate reason for the delay, counsel simply appeared on the day of the hearing and announced he had not used the time he had been given. Under the circumstances, the magistrate did not abuse his discretion in denying the request.
Mr. Waters argues that denial of the continuance was an abuse of discretion because it prevented him from presenting evidence about child custody, which was the "critical issue" in the case. However, Mr. Waters has not appealed the custody decision. Furthermore, Mr. Waters' attorney did not proffer the names of any proposed witnesses on the custody issue, nor did he indicate the substance of their anticipated testimony. The absence of any such information in the record would prevent us from finding prejudice, even if we felt the magistrate had abused his discretion. Compare, State v. Brooks (1989), 44 Ohio St.3d 185, 195
(prejudice is not shown from denial of continuance, where the defendant failed to proffer the desired testimony and how it may have been relevant to his defense).
As we said, however, we find no abuse of discretion. Parties and their attorneys are responsible for meeting court deadlines, particularly when the parties themselves have agreed to the proposed schedule.
In light of the foregoing discussion, the third assignment of error is overruled.
 IV
The fourth assignment of error raises issues concerning the child support that was ordered. In this regard, Mr. Waters claims that the trial court erred in failing to consider: 1) Mr. Waters' support of another child; and 2) his expense for medical insurance payments. These issues were raised in an amended brief, to which Mrs. Waters has not responded.
The record in this case indicates that Mr. Waters did not include any information on medical insurance expense on the affidavit of income and expenses he originally filed with the trial court. He also did not mention support payments for other children. Likewise, the child support worksheet Mrs. Waters filed with her answer to the divorce complaint lists no expenses for either party for hospitalization or annual court-ordered support for other children.
On September 9, 1998, the parties filed agreed temporary orders, requiring Mr. Waters to pay support in the amount of $318.62, bi-weekly, plus poundage, for the three children. This was based on the amounts in Mrs. Waters' worksheet and reflected a sum of $230.12 in support per child per month, for a total yearly support obligation of $8,284.24. The agreed temporary order also required Mr. Waters to continue to maintain hospitalization on the children through his employer.
Subsequently, on October 29, 1998, Mr. Waters filed a motion asking the court to vacate the temporary order of support because the child support worksheet did not consider $110.00 that Mr. Waters paid per pay period for a child not in his custody. According to Mr. Waters, the worksheet also did not include health insurance costs. The motion was heard on November 19, 1998, but the transcript of the hearing is not in the record. However, after the hearing, the magistrate recommended that the child support be changed due to errors in the worksheet. A corrected worksheet was attached to the magistrate's decision.
Significantly, the corrected worksheet did not show any amount for court-ordered child support of another child. The worksheet did reflect an amount of $236 for health insurance costs. Due to changes in Mrs. Waters' income, Mr. Waters was ordered to pay a lesser amount of child support per child, i.e., $153.78 per child per month. According to the worksheet, Mr. Waters' total support obligation per year would be about $5,536.11. On December 3, 1998, the trial court adopted the magistrate's recommendation and made it an order of the court. The record does not indicate that any objections were filed to the December 3, 1998 decision.
Subsequently, on March 5, 1999, Mrs. Waters filed a motion for modification of child support and for an award of spousal support. This motion was heard on March 12, 1999, with both parties present. A magistrate's order was then filed on March 22, 1999, dismissing Mrs. Waters' motion. In the decision, the magistrate noted that Mr. Waters objected to re-calculation of child support because two sets of temporary orders had already been issued and no significant change of circumstances justified yet another set of orders. The magistrate agreed with Mr. Waters and refused to re-calculate support or to award temporary spousal support. Additionally, the magistrate noted that neither side had filed any objections to the prior temporary orders.
The final divorce hearing was then held on April 14, 1999. At that time, Mr. Waters did not give the magistrate any information about health insurance. He also did not testify about a child support obligation for another child, nor did he give the magistrate any documentation pertaining to a support obligation for another child.
On April 16, 1999, the magistrate issued a decision with findings of fact and conclusions of law. In the decision, the magistrate discussed the child support computation worksheet in detail. A child support worksheet was also attached to the decision. As with the worksheet for the temporary order, no credit was given for court-ordered support payments for other children. Further, the magistrate did not give Mr. Waters an adjustment on line 19 of the form for health insurance premiums. In this regard, the magistrate commented that an adjustment was not appropriate because Mr. Waters did not provide any evidence of his yearly out-of-pocket cost for health insurance. The recommended support amount, based on the worksheet, was $223.30 per month per child, for a total annual support obligation of $8038.84, or $157.68 per week (with poundage included).
On April 29, 1999, Mr. Waters filed objections to the magistrate's decision. Among other things, Mr. Waters objected to the magistrate's failure to consider the child support paid to another child. However, Mr. Waters did not object to the failure to include health insurance costs. Mr. Waters also did not attach any documents establishing, in fact, that he was legally obligated to pay child support for another child.
After the first objections were filed, Mr. Waters was given permission to file supplemental objections. These objections, filed on June 28, 1999, by Mr. Waters' new counsel, and fourth attorney, raised issues pertaining only to child custody, the sale of the marital premises, and spousal support. Again, Mr. Waters failed to provide the court with any documentation of his alleged child support obligation.
Ultimately, on May 5, 2000, the trial court considered the objections and rejected them, including Mr. Waters' objection to the amount of child support. In this regard, the court noted that the magistrate had followed the statutory guidelines and had found no basis for deviation. Based on its own review, the court agreed that no basis for deviation existed. Additionally, the court found that the support followed the mandates of the law and the evidence which had been presented.
As we mentioned, Mr. Waters says in his amended brief that the trial court erred by failing to include the child support and medical insurance payments in its calculations. We agree with Mr. Waters that trial courts must calculate child support in accordance with the basic child support schedule and worksheets in R.C. 3113.215. Marker v. Grimm (1992),65 Ohio St.3d 139. In Marker, the Ohio Supreme Court stressed that "[t]he terms of R.C. 3113.215 are mandatory in nature and must be followed literally and technically in all material respects." Id. at paragraph two of the syllabus.
Contrary to Mr. Waters' contention, however, the trial court did not fail to comply with statutory requirements. Specifically, the court did include calculations for court-ordered support for other children and for health premiums. However, the calculations were listed as "zero," because Mr. Waters did not give the court any documentation, i.e., evidence to support his claims. Lack of verification by supporting documentation is fatal. See Bowen v. Thomas (1995), 102 Ohio App.3d 196 (rejecting claim for deduction of court-ordered support due to lack of evidence in the record. In particular, the court noted that R.C. 3113.215(B)(5)(b) allows recognition of court-ordered support payments, provided that payment is "`verified by supporting documentation.'") Id. at 200 (emphasis added).
Mr. Waters says in his brief that he brought the issue of court-ordered support to the court's attention at trial and by later objection. Unfortunately, the trial transcript contains no reference to this matter. Furthermore, as we said earlier, while the issue may have been mentioned in a few pleadings, no documentation was ever given to the court. The rule is well established that statements in pleadings are not evidence. See, e.g., Farmers Prod. Credit Assn. of Ashland v. Stoll (1987), 37 Ohio App.3d 76, 77. Accordingly, the trial court did not err in failing to credit Mr. Waters with court-ordered support paid to another child. If such evidence existed, Mr. Waters should have submitted it to the court.
Similarly, Mr. Waters claims in his brief that the trial court heard testimony that he was incurring out of pocket expenses for health insurance. However, we have searched the transcript and have found nothing to substantiate this allegation. Again, if such evidence existed, Mr. Waters should have given it to the court. We also note that even if the situation were otherwise, the lack of objection to the magistrate's recommendations precludes us from considering the issue of health insurance premiums. See, e.g., R.G. Real Estate Holding, Inc. v. Wagner (Apr. 24, 1998), Montgomery App. No. 16737, unreported, p. 3. The only exception would be in cases of plain error. Id. Based on the record before us, we see no reason to apply the plain error doctrine. As we said, if appropriate evidence existed, Mr. Waters should have provided it to the trial court.
In light of the preceding discussion, the fourth assignment of error in the amended brief is overruled. Because all the assignments of error have been overruled, the decision of the trial court is affirmed.
FAIN, J., and YOUNG, J., concur.