IN RE CHANGE OF NAME OF RICHARD BRIAN NEWCOMB AND STEPHEN THOMAS NEWCOMB.

108

(No. 83AP-1092—Decided
June 14, 1984.)

*Mr. Daniel J. Igoe,* for appellee
Patricia Igoe.

*Messrs. Price & Berry* and *Mr. John
F. Berry,* for appellant William S.
Newcomb, Jr.

STRAUSBAUGH, J. This is an appeal
by appellant, William S. Newcomb, Jr.,
from the order of the probate court
ordering that the name of Richard Brian
Newcomb be changed to Richard Brian
Igoe and the name of Stephen Thomas
Newcomb be changed to Stephen
Thomas Igoe.

This action was commenced by the
mother, Patricia L. Igoe, to change the
last names of Richard Brian Newcomb
and Stephen Thomas Newcomb, now
thirteen-year-old twins, to Richard
Brian Igoe and Stephen Thomas Igoe,
pursuant to R.C. 2717.01. The non-
custodial father did not consent and
strongly objected to the change. A hear-
ing was held before the probate court,
which rendered its decision August 11,
1983, following which the court
rendered the following findings of fact
and conclusions of law:

Findings of Fact

"(1) Petitioners have satisfied all
notice requirements of Ohio Revised
Code § 2717.01 and the non-consenting
natural father, William S. Newcomb,
Jr., received notice of the hearing.

"(2) At the evidentuary [*sic*] hear-
ing, both the petitioner and the non-
consenting natural father were present
and represented by counsel.

"(3) The petitioners, Richard Brian
Newcomb age 13, date of birth February
14, 1970, and Stephen Thomas New-
comb age 13, date of birth February 14,
1970.

"(4) The petition was brought by
their next friend, Patricia L. Igoe, the
ex-wife of the natural father.

"(5) Patricia L. Igoe and the non-
consenting natural father were married
on May 16, 1964. In addition to Stephen
and Brian, one other child was born of
the marriage, namely Scott Newcomb,
age 18, date of birth October 31, 1964.

"(6) The natural father and natural
mother were divorced on March 23,
1972 and the natural mother was award-
ed custody subject to visitation rights
granted the natural father with obliga-
tion of the natural father to pay child
support in the amount of $400.00 per
month.

"(7) On August 24, 1973, the
natural mother married Kevin Igoe.
Since that time the children have lived
continuously [*sic*] with the Igoe family.

"(8) The natural father has paid all
child support payments as agreed upon
in the Separation Agreement and has
otherwise provided some additional sup-
port.

"(9) The natural father has exer-
cised his visitation rights on a continuing
basis and with some regularity at least
following the Igoe marriage. On several
occasions the natural father has taken
the children on extended vacations. The
petitioners have maintained a relation-
ship with their grandparents Newcomb
including visitation of their own volition.

"(10) Scott Newcomb, the oldest
child, is well-known in the City of
Worthington as an athlete and is known
to Brian and Stephen's friends as New-
comb.

"(11) In August 1982, Stephen be-
came angry with his natural father
because of an assumed slight of Stephen
of the natural father and expressed his
anger to his mother, Mrs. Igoe. At that
time, Mrs. Igoe suggested to Stephen

that he change his name to Igoe because he was switching schools to go to Perry Middle School and would only know approximately twenty-five percent of the children attending the seventh grade. Mrs. Igoe subsequently suggested the same to Brian.

"(12) In August 1982, Stephen decided to change his surname to Igoe and of his own volition, went to Perry Middle School to obtain the registration form indicating to the school personnel that his name was Stephen Igoe and completed the form in the name of Stephen Igoe.

"(13) In August of 1982, Mrs. Igoe went to Perry Middle School to discuss the change of name with the school secretary, indicating that Stephen and Brian were using the name of Igoe and requesting that the school records be changed to reflect the name of Igoe. In the fall of 1982, school officials were contacted by counsel for William S. Newcomb, Jr., and advised that Stephen and Brian's correct surname was Newcomb, whereupon the written record of Perry Middle School [was] restored to reflect the name of Newcomb. Although the written record of the school reflects the name of Newcomb, class mates, coaches and teachers continued to call both Stephen and Brian by the name of Igoe in accord with the wishes of the boys.

"(14) Both boys first commenced using the name Igoe in making charges at a country club pool in order to avoid problems or embarrassment.

"(15) Both boys indicated that they knew that this would hurt their natural father's feelings but that he would get over it. They did not feel that it would hurt their relationship with their father, but may hurt their father's relationship with them.

"(16) The natural father is not sure of what his feelings are but he views this as a *de facto* adoption and this may contribute to an estrangement with the boys. The petitioners have discussed the

matter with each other, with friends, teachers and parents and have voluntarily and intelligently elected to be known by the surname of Igoe.

"(17) Both Brian and Stephen want their name changed to Igo [*sic*].

"(18) The change of name was not requested for a fraudulent purpose.

"(19) Brian and Stephen have a logical purpose for changing their name to Igoe; to-wit, so they do not have to answer so many questions about their parents' marital relationship and as a matter of convenience to them in using charge systems that are available to them.

"(20) There was no undue influence exerted on the boys in requesting a change of name."

Conclusions of Law

"(1) This matter is properly before this Court and this Court has jurisdiction of the same. All parties have been properly served and all required notices given.

"(2) Brian and Stephen are competent to testify.

"(3) O.R.C. § 2717.01 does not require a finding as to the best interest of the children, and this Court makes no such determination.

"(4) Pursuant to O.R.C. § 2717.01, any child who is sufficiently mature to formulate logical opinions and can demonstrate sufficient independence of thought, may have his name changed upon proper notice so long as the change is the child's desire and not for fraudulent purposes.

"(5) The only reason for the notice provision in O.R.C. § 2717.01 is to permit the non-consenting parent to present his views to the child and to assure himself that it is the child's independent desire.

"(6) A change of name will be granted."

On October 31, 1983, the court filed a judgment entry changing the names of the Newcomb children to Igoe from

which entry this appeal is taken, raising the following three assignments of error:

"1. The Probate Court erred as a matter of law in failing to find that reasonable and proper cause did not exist fo [*sic*] the change of name.

"2. Assuming *arguendo* that the Probate Court made a reasonable and proper cause finding, the Probate Court erred against the weight of the evidence in finding that reasonable and proper cause for change of name existed.

"3. The Probate Court erred as a matter of law in failing to find whether the change of name was in the best interests of the Newcomb children."

R.C. 2717.01 provides:

"A person desiring to change his name may file a petition in the probate court of the county in which he resides, setting forth that he has been a bona fide resident of that county for at least one year prior to the filing of the petition, the cause for which the change of name is sought, and the new name asked for. Upon being satisfied by proof in open court of the truth of the facts set forth in the petition, that there exists reasonable and proper cause for changing the name of the petitioner, and that notice of the intended application has been given by one publication in a newspaper of general circulation in the county at least thirty days prior to the filing of the petition, the court may order the change of name.

"When application is made by or on behalf of a minor under the age of eighteen years, the consent of both living, legal parents of said minor shall be filed, or the matter shall be set for hearing on a day certain, and a parent not consenting shall be given notice of the hearing upon the application."

The parties concede this to be a case of first impression in the state of Ohio and, perhaps, elsewhere. The only test set forth by the legislature in R.C. 2717.01 is that "there exists reasonable and proper cause for changing the name." Implicit in that standard is that the best interest of the child must be considered by the trial court.

A change of name is a significant event in the life of a child. It has long been the tradition in this country for a daughter to bear the name of her father up to the time of her marriage, and a son throughout his lifetime. When a child fully appreciates all of the circumstances and there is evidence that it is clearly in the best interest of the child to do so, there may be justification for allowing a change of name from that of the father. In the absence of such evidence, as here, it would not contribute to the child's best interest to permit interference with the usual custom of succession to the father's name or to foster any unnatural barrier between the father and child.

Certainly, more than a mere desire on the part of an upset child, fostered by the suggestion of the divorced and remarried mother to change the surname to that of the second husband, is necessary. Nor is the use of the family credit card at a country club a sufficient reason.

Even in cases where the child is allowed to make an election to choose the parent with whom the child is to live, as provided in R.C. 3109.04, such right is subject to the court's finding that it would not be in the best interest of the child to have the choice.

While there can be no hard and fast rule governing the change of a child's name, certainly there are circumstances when a change to the surname of the mother's second husband may be in the best interest of the child, especially when the child's father indulges in improper conduct, fails to support, abandons the child, is and has been indifferent to the child's welfare, and does not raise a timely objection to the change of name. On the other hand, when the father is and has been supporting the child, manifests an abiding in-

terest in the child, is not infamous, has exercised visitation privileges and has promptly objected to the change of name, in the absence of a special and overwhelming reason we find that it is not in the best interest of the child, and, therefore, there does not exist a reasonable and proper cause for changing the name of a minor under the age of eighteen years. A review of the transcript of proceedings and the findings of fact and conclusions of law indicate that a reasonable and proper cause has not been shown in this case. The first assignment of error is sustained.

With respect to the second assignment of error, we find that, for the same reasons described in our ruling upon the first assignment of error, the probate court erred in finding that reasonable and proper cause for change of name existed and, therefore, sustain the second assignment of error.

With respect to the third assignment of error, the probate court erred in failing to find whether the change of name was in the best interests of the Newcomb children for the same reasons given in our ruling upon the first assignment of error.

For the foregoing reasons, appellant's assignments of error are well-taken and are, therefore, sustained, and the judgment of the trial court is reversed and remanded for the entry of a final judgment for appellant.

*Judgment reversed
and cause remanded.*

WHITESIDE and REILLY, JJ., concur.