## In re Alexis G. Wilson and Terrence M. Wilson

[648 A.2d 648]

No. 93-240

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed July 1, 1994

*Charles T. Shea, Dennis R. Pearson, Craig Weatherly and Lucy T. Brown* of *Gravel and Shea*, Burlington, for Appellant Grace Pomerleau.

*James W. Murdoch* of *Murdoch & Hughes*, Burlington, for Appellee Randall Wilson.

**Johnson, J.** Mother appeals from a decision of the superior court reversing the probate court order granting her petition to change the surnames of her children, Alexis and Terrence, from their father's surname to her birth name, Pomerleau. Mother argues on appeal that

the superior court (1) improperly employed a presumption in favor of father's surname, (2) did not use a sufficiently broad set of factors to determine the children's best interests and improperly weighed those factors it did consider, and (3) abused its discretion by disregarding the testimony of the children's psychologist. We affirm.

Grace Pomerleau and Randall Wilson were married in 1982. Upon marriage, Grace took the surname Pomerleau-Wilson. Two children, Alexis and Terrence, were born of the marriage. The parents gave the children the Wilson surname. In 1988, the parents separated. The children were five and one years old at the time.

Upon divorce, mother resumed use of her birth name. Mother has had both legal and physical responsibility for the children since the divorce. Father has the right to visit the children on a set visitation schedule and the obligation to pay child support. Father, however, has failed to pay child support for substantial periods even though he was generally employed, and visited with the children less than was permitted in the divorce decree. Nonetheless, the trial court found that the children "have continued to maintain a good relationship with the father although he is quite clearly the less dominant parent in their lives." The trial court also found that the children have good relationships with both parents and their extended families. The relationship with the maternal family is closer because the children spend significantly more time with their maternal grandparents. Since the divorce, both parents have remarried. Mother retained the Pomerleau surname after she married the second time.

Mother brought the name change petitions in May 1992 when Alexis was 10 and Terrence was 5. Alexis had already begun using the Pomerleau name at school, and mother had registered Terrence for school under the name Pomerleau. The probate court granted the petitions. Father appealed to the superior court, which reversed, finding that it was in the children's best interest to retain father's surname of Wilson. It is from this decision that mother appeals.

I.

The first issue on appeal is the standard a trial court should apply in considering a name change petition for a minor child brought under 15 V.S.A. § 812. Mother argues that the superior court improperly presumed that the children should retain their father's surname. She contends that the proper rebuttable presumption is in favor of the custodial parent's naming preference, or in the alternative, that the presumption should be in favor of a "blank slate."

■ The trial court employed the clearly established standard for review of a name change petition regarding minor children in Vermont and most other jurisdictions—whether the change is in the best interests of the minor children. *In re Fletcher*, 145 Vt. 209, 212, 486 A.2d 627, 629 (1984); see also *Bobo v. Jewell*, 528 N.E.2d 180, 184 (Ohio 1988) (most courts apply best interests standard when considering name change petition). Mother argues, however, that the best interests analysis should be "guided" by a rebuttable presumption in favor of the custodial parent's preference, just as the custodial parent makes other decisions regarding education and religion. *In re Schiffman*, 620 P.2d 579, 584, 169 Cal. Rptr. 918, 923 (1980) (Mosk, J., concurring). Despite mother's assertion to the contrary, this "guidance" would be inconsistent with the best interests analysis because it is not the custodial parent's preference, but the best interests of the child that "is the paramount consideration in determining whether a child's name should be changed." *Hamby v. Jacobson*, 769 P.2d 273, 277 (Utah Ct. App. 1989). In addition, unlike proposed name changes, decisions regarding religion and education are not, in the first instance, overseen by the courts.

■ The trial court also properly rejected mother's contention that it should act as if it were writing on a "blank slate." Mother argues that a "blank slate" starting point is proper because we cannot assume that the children's interests at birth are the same as the children's interests at the time of the name change petition, or that the parents reflected on the initial naming decision. The problem with the "blank slate" approach is that it ignores the fact that the children are not a blank slate at the time of the petition. The parents gave the children their father's surname, Wilson, at birth and subsequently taught them that their name was Wilson. Moreover, this approach is not consistent with the best interests analysis, which focuses on the impact of a *change* in name. If the children's interests have changed since birth, as mother argues they have, the best interests analysis is designed to take such a change into account.

■ Nonetheless, mother contends that the best interests analysis, which necessarily maintains the status quo absent a finding that a name change is in the child's best interests, is inherently gender-biased because most children are given their father's surname at birth. We agree that the best interests standard should not be used to give greater weight to the paternal surname. Accord *Hamby*, 769 P.2d at 278 ("[L]ip-service to the best interests of the child should not be

used as a subterfuge to nevertheless perpetuate the paternal preference."). We also agree that it has been a long-held custom to name a child after the father, although such a practice is not mandated and has been eroded in recent years. The best interests analysis, however, is not gender-biased. Rather, it is gender-neutral. The test starts with the name the parents have given the child, whether that surname be maternal, paternal, a combination of both parents' surnames, or of some other origin, and provides that "a change in the child's surname should be granted only when the change promotes the child's best interests." *Daves v. Nastos*, 711 P.2d 314, 318 (Wash. 1985). If, as here, the court declines to change a child's name from the father's surname to the mother's surname because such a change is not in the children's best interest, the decision does not inherently reflect gender bias merely because the parents' original naming choice followed traditional custom.

## II.

Mother next argues that the list of criteria the trial court considered in determining the children's best interest was too narrow. In the alternative, mother argues that the trial court improperly applied the factors it did consider. We disagree.

■■ The controlling statute, 15 V.S.A. § 812, is silent as to the factors a court should consider in relation to a name change petition. Other courts have considered many factors, including the child's preference, taking into account the child's age and maturity; the length of time the child has used the surname; the effect of a surname change on the preservation and development of the child's relationship with each parent; whether the child might feel embarrassment or discomfort bearing a surname different from the rest of the family; whether any negative association or social stigma has attached to either the current or proposed name; the motives of the moving parent; and any other factor relevant to the child's best interest. See *In re Schiffman*, 620 P.2d at 583, 169 Cal. Rptr. at 922–23; *Bobo*, 528 N.E.2d at 185; *In re Grimes*, 609 A.2d 158, 161 (Pa. 1992); *Hamby*, 769 P.2d at 277; *Daves*, 711 P.2d at 318. Because the facts of each petition will differ, some of the factors may not be relevant in a particular case and should not be considered. *Bobo*, 528 N.E.2d at 185; *Hamby*, 769 P.2d at 277. The court has broad discretion in determining what is in the best interests of the children, *Bissonette v. Gambrel*, 152 Vt. 67, 69–70, 564 A.2d 600, 601 (1989), and thus which factors the court

considers is a matter of discretion. In weighing these or other factors, what is important is that the court explain its reasons for granting or denying the name change petition. See *Corrette v. Town of St. Johnsbury*, 140 Vt. 315, 316, 437 A.2d 1112, 1113 (1981) (when making findings of fact, tribunal has duty to sift evidence and make clear statement so parties and this Court will know what was decided and how decision was reached).

▪ Mother argues that the trial court's inquiry was too restricted because the court considered only the effect a name change would have on the noncustodial parent's relationship with the children, any stigma attached to the original surname, and the length of time the children used the surname. Although the trial court stated that those three factors were to be considered, the inquiry was actually much broader. The trial court made findings on the effect of a name change on the children's relationship with both mother and father, the children's relationship with mother's extended family, whether any stigma was attached to either surname, and whether the children would suffer any embarrassment by having a different name from their mother. The court decided not to give weight to the children's preference as stated by the parents and the children's psychologist, because the court found that when asked, the children "tend to say what they believe the questioner wants to hear."

Mother argues that the court should have given weight to father's failure to pay support for the children for more than two years and his inconsistent visitation. We reiterate, however, that the focus of the inquiry is the children's best interests, and not the ability or willingness of a parent to pay support or meet the visitation schedule where, as here, the noncustodial parent has managed to maintain a good relationship with the children.

▪ We also cannot agree that the trial court improperly weighed the factors considered. The court concluded, and mother does not disagree, that the children have a strong bond with mother and her maternal family, so that while changing the children's surname to Pomerleau might help them identify with her family unit, "there is no need to strengthen the bonds" further. In contrast, the court found that father's relationship with the children is "one already strained by the pressures of a work schedule, and the pressures of family politics since the divorce," and a change will likely detrimentally affect the children's relationship with their father and draw them further away from him.

Mother argues that the best interests analysis makes it almost impossible to win a name change petition when the children bear the name of the noncustodial parent. It is true that the custodial parent and the children, having regular contact and the primary home, have a greater opportunity to maintain their psychological relationship without having to rely on the symbol of a name, and this fact may weigh heavily in support of retaining the noncustodial parent's surname. But the determination is case specific, and here the trial court found that the best way for the children to maintain close contact with both parents was to retain the noncustodial parent's surname. Mother has failed to demonstrate that the trial court abused its discretion in denying the name change petition.

## III.

Finally, mother argues that the trial court abused its discretion when it disregarded the testimony of the children's psychologist, Dr. Jeffrey Martin. Doctor Martin testified that Alexis did not begin using the Pomerleau name just to please her mother and that if Alexis were forced to revert to the Wilson name, there might be conflict.

The court found that Dr. Martin's testimony was "guarded" because he "stated it would be difficult to say what conflict would be caused by a decision to legally leave [Alexis's] name as Wilson." Because the court was the trier of fact, the weight of the evidence and the credibility of the witnesses was for the court to decide. V.R.C.P. 52(a)(2). The court explained its reason for finding the expert unpersuasive; thus, we find no error. *Bissonette*, 152 Vt. at 71, 564 A.2d at 602.

*Affirmed.*