In the Matter of Brian Alexander
GUTHRIE, A Child.

No. 05–98–01437–CV.

Court of Appeals of Texas,
Dallas.

April 4, 2001.

Gregory T. Brewer, McKinney, for Appellant.

Brian S. Loughmiller, Loughmiller & Deplaza, Dallas, for Appellant.

Diana L. Porter, Plano, for Appellee.

Before Justices FITZGERALD, MARTIN RICHTER, and ROSENBERG.[1]

## OPINION

Opinion By Justice ROSENBERG.

This is a voluntary parentage case. Mark Roger Buckley, the biological father

---

1. The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

of Brian Alexander Guthrie, sought to establish a parental relationship with his son, as well as establish visitation, child support, and a change of the child's last name to his. After a hearing, the trial court ordered the name change and denied retroactive child support. In four points of error, Elene Therese Guthrie, the mother, appeals the judgment, alleging the trial court did not file findings of fact and conclusions of law, the name change was not in the best interest of the child, and the trial court erred in overruling her objection to the admission of a rule 11 agreement into evidence and in refusing to award retroactive child support. We overrule Guthrie's points of error and affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Buckley and Guthrie had a relationship while she lived in California, and Guthrie became pregnant. During her pregnancy, Guthrie filed suit in California to establish paternity. That suit was dismissed after Guthrie moved to Connecticut and gave birth to the child. Guthrie then moved with the child to Collin County, Texas, where Buckley filed this cause. Guthrie contested Buckley's paternity. The trial court ordered blood tests. After the tests, Guthrie filed a counter petition requesting that the court establish the child's parentage. In addition to a request to establish support and visitation, she requested retroactive child support from the date of Buckley's Texas petition and payment of an equitable portion of all pre- and post-natal-related health care expenses for her and the child.

The case was mediated, and all issues were resolved except the name of the child and the amount, if any, of retroactive support. After a bench trial, the court ordered the child's last name changed to Buckley and denied the request for retroactive support. The trial court denied Guthrie's motion for new trial. Guthrie appeals these rulings in the judgment.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In her third point of error, Guthrie complains that the trial court did not file requested findings of fact and conclusions of law. Guthrie contends that she has made a proper request. Buckley responds that her request was not proper.

In cases involving the parent-child relationship, an appellant may be entitled to two types of findings of fact and conclusions of law. The first is pursuant to Texas Rule of Civil Procedure 296. This rule requires that a request be filed within twenty days after the judgment is signed. TEX. R. CIV. P. 296. If the court fails to file the findings within twenty days of the request, the appellant must file a notice of past due findings of fact and conclusions of law within thirty days after filing the original request. TEX. R. CIV. P. 297. The failure to file a notice of past due findings of fact waives the right to complain about the trial court's failure to file findings of fact and conclusions of law. See Las Vegas Pecan & Cattle Co. v. Zavala County, 682 S.W.2d 254, 255–56 (Tex. 1984); Monroe v. Frank, 936 S.W.2d 654, 658 (Tex.App.—Dallas 1996, writ dism'd w.o.j.). Guthrie requested findings of fact and conclusions of law pursuant to rule 296, but she failed to file a notice of past due findings of fact pursuant to rule 297 when the trial court did not make her requested findings. Therefore, Guthrie waived her complaint that the trial court failed to enter findings of fact and conclusions of law pursuant to the rules of civil procedure. See Monroe, 936 S.W.2d at 658.

■ The second type of findings of fact is pursuant to section 154.130 of the Texas Family Code, which provides for findings in child support orders. Tex. Fam.Code Ann. § 154.130 (Vernon 1996). The court is required to make findings if: (1) a party files a written request with the court not later than ten days after the hearing; (2) a party makes an oral request during the hearing; or (3) the amount of child support ordered by the court varies from the amount computed by applying the statutory guidelines. *Id.* § 154.130(a)(1)-(3). Guthrie made no written or oral request under this statute. Thus, this section applies if the amount of the support ordered deviated from the guidelines. Here, Guthrie complains about the failure to award retroactive support. Retroactive support concerns payment of child support for a period before a child support order. Section 154.130 is directed to the setting of monthly support. Therefore, the refusal to award any retroactive support does not constitute a deviation from the guidelines such that a statutory finding is required.

We overrule Guthrie's third point of error.

## NAME CHANGE

In her first point of error, Guthrie contends that the trial court erred in changing the name of Brian Alexander Guthrie to Brian Alexander Buckley because the evidence did not support a finding that changing the child's name would be in the best interest of the child. She argues that the finding of paternity does not require a name change, and the father has no protected interest or constitutional right to have the child's name changed to his. Buckley responds that he does have a protected interest, Texas courts should recognize the custom and practice of children carrying the last names of their fathers as a factor in changing a child's name to that of the father, and it is in the best interest of the child to have Buckley's last name.

■ We review the trial court's granting of a name change under an abuse of discretion standard. *Bennett v. Northcutt,* 544 S.W.2d 703, 706–08 (Tex.Civ.App.—Dallas 1976, no writ) (per curiam). The test for abuse of discretion is not whether, in the opinion of this Court, the facts present an appropriate case for the trial court's actions. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241 (Tex. 1985). Rather, the test is whether the court acted without reference to any guiding rules and principles. *Id.* at 241–42. A trial court abuses its discretion as to factual matters when it acts unreasonably or arbitrarily. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992) (orig. proceeding). A trial court abuses its discretion as to legal matters when it fails to analyze or apply the law correctly. *Id.* at 840.

■ A father has no constitutional right to have his children bear his last name. *Newman v. King,* 433 S.W.2d 420, 422–23 (Tex.1968); *Concha v. Concha,* 808 S.W.2d 230, 231–32 (Tex.App.—El Paso 1991, no writ). The only protectable interest a father has in a child's name recognized by Texas courts is when the mother attempts to change the child's surname from the father's. *G.K. v. K.A.,* 936 S.W.2d 70, 73 (Tex.App.—Austin 1996, writ denied); *see, e.g., Newman,* 433 S.W.2d at 423; *In re Griffiths,* 780 S.W.2d 899, 900 (Tex.App.—Amarillo 1989, no writ); *Brown v. Carroll,* 683 S.W.2d 61, 63 (Tex. App.—Tyler 1984, no writ); *In re Baird,* 610 S.W.2d 252, 254 (Tex.Civ.App.—Fort Worth 1980, no writ); *Bennett,* 544 S.W.2d at 707–08.

■ The standards for changing the name of a minor are controlled by the Texas Family Code. The family code provides that "[t]he court may order the name

of a child changed if the change is in the best interest of the child." TEX. FAM. CODE ANN. § 45.004(a) (Vernon 1996). The general rule is that courts will exercise the power to change a child's name reluctantly and only when the substantial welfare of the child requires it. *Newman*, 433 S.W.2d at 423; *Bennett*, 544 S.W.2d at 707. A parent's interest and desire is only a secondary consideration. *In re J.K.*, 922 S.W.2d 220, 222 (Tex.App.—San Antonio 1996, no writ); *Ex parte Taylor*, 322 S.W.2d 309, 312 (Tex.Civ.App.—El Paso 1959, no writ). Texas has no statute giving the right to name a child to either parent. However, the name chosen by one of the parents will not be changed unless the dissident parent shows a good reason for such change. *In re M.L.P.*, 621 S.W.2d 430, 431 (Tex.Civ.App.—San Antonio 1981, writ dism'd).

▮▮▮ Although Buckley urges that we consider a custom or tradition of a child assuming the surname of the father as a best interest factor, we note that even a custom of carrying a father's surname within the marital relationship has not always been the situation in western societies. *See Gubernat v. Deremer*, 140 N.J. 120, 657 A.2d 856, 859–67 (1995) (describing history of surnames and connecting tradition with emergence of women's legal and social rights). And there is no such custom when it comes to adopting a surname for a child born out of wedlock. *See id.* at 862, 864. Those children usually received their mother's surname. *Id.* at 864. Additionally, there is no Texas statutory requirement that a child receive his or her father's surname under any circumstance of birth. Further, in Texas any

custom or tradition of a child receiving a father's surname does not override the best interest of the child. *See Newman*, 433 S.W.2d at 424; *In re C.B.M.*, 14 S.W.3d 855, 862 (Tex.App.—Beaumont 2000, no pet.); *G.K.*, 936 S.W.2d at 73. Finally, under the Texas Equal Rights Amendment, we must not give preference to one parent's name over another on the basis of whether the parent is the father or the mother. TEX. CONST. art. I, § 3a ("Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin."). Texas emphasizes an equality between parents. *See* TEX. FAM. CODE ANN. § 153.003 (prohibiting discrimination based on sex in determining conservatorship), § 154.010 (child support to be determined without regard to sex of parent paying or receiving, or sex of child) (Vernon 1996). When parental equality is the law, arguing that the child of unmarried persons should bear the surname of the father because of custom is another way of permitting illegal inequality. *See* TEX. CONST. art. I, § 3a; *Bobo v. Jewell*, 38 Ohio St.3d 330, 528 N.E.2d 180, 185 (1988) (in light of parental equality, bestowing parental surname on child of unmarried parents based on custom "is another way of arguing that it is permissible to discriminate because the discrimination has endured for many years"); *see also Keegan v. Gudahl*, 525 N.W.2d 695, 700 (S.D.1994) (court is guided by best interest of child, and neither father nor mother has advantage from custom or custody). Thus, the right of the mother to have the child bear her surname must be recognized as equal to that of the father.[2] *See* TEX. CONST. art. I, § 3a.

2. Courts in other jurisdictions have adopted the proposition that a father has no greater interest than the mother in a child's surname. *See, e.g., In re Marriage of Schiffman*, 28 Cal.3d 640, 169 Cal.Rptr. 918, 620 P.2d 579,

582–83 (1980); *In re Marriage of Gulsvig*, 498 N.W.2d 725, 729 (Iowa 1993); *In re Saxton*, 309 N.W.2d 298, 301 (Minn.1981); *Gubernat*, 657 A.2d at 867; *Keegan*, 525 N.W.2d at 698–

 Therefore, we consider the factors that address the best interest of the child, not the needs of a particular parent, or customs or traditions that reflect a constitutionally prohibited inequality.[3] Factors that have been considered proper in a best interest test are:

> whether the changed name or the present name would best avoid embarrassment, inconvenience, or confusion for the custodial parent or the child;[4]

> whether it would be more convenient or easier for the child to have the same name as or a different name from the custodial parent, either the changed name or the present name;[5]

> whether the changed name or the present name would help identify the child as part of a family unit;[6]

> the length of time the surname has been used;[7]

> parental misconduct, such as support or nonsupport or maintaining or failing to maintain contact with the child;[8]

> the degree of community respect associated with the present or changed name;[9]

> whether the change will positively or adversely affect the bond between the child and either parent or the parents' families;[10]

> any delay in requesting or objecting to name change;[11]

> the preferences of the child;[12]

> the age and maturity of the child;[13]

> when the child maintains the mother's surname, assurances by the mother that

700; *Daves v. Nastos,* 105 Wash.2d 24, 711 P.2d 314, 318 (1985).

3. *See generally* Jay M. Zitter, Annotation, *Rights and Remedies of Parents Inter Se with Respect to the Names of Their Children,* 40 A.L.R. 5th 697, 1996 WL 568425 (1996).

4. *Newman,* 433 S.W.2d at 423–24; *Plass v. Leithold,* 381 S.W.2d 580, 582 (Tex.Civ.App.—Dallas 1964, no writ); *see Gubernat,* 657 A.2d at 867; *In re Wilson,* 162 Vt. 281, 648 A.2d 648, 651 (1994); *Beyah v. Shelton,* 231 Va. 432, 344 S.E.2d 909, 911 (1986).

5. *See, e.g., In re M.L.P.,* 621 S.W.2d at 431; *see also In re Andrews,* 235 Neb. 170, 454 N.W.2d 488, 492 (1990); *Keegan,* 525 N.W.2d at 699.

6. *Newman,* 433 S.W.2d at 423–24 (name changed to stepfather's surname when same as brothers and sister in family); *In re C.B.M.,* 14 S.W.3d at 862 (no change to father's name when child raised by mother and maternal relations); *In re J.K.,* 922 S.W.2d at 222 (mother gave child father's name because she believed child should have father's surname); *Pintor v. Martinez,* 202 S.W.2d 333, 335 (Tex. Civ.App.—Austin 1947, writ ref'd n.r.e.); *see In re Andrews,* 454 N.W.2d at 493.

7. *Newman,* 433 S.W.2d at 423–24 (name changed to stepfather's surname when used since age two); *see In re Andrews,* 454 N.W.2d at 492.

8. *See G.K.,* 936 S.W.2d at 73 (name change denied due to adulterous affair and father remained married to another woman); *see also In re Andrews,* 454 N.W.2d at 492.

9. *See, e.g., D.R.S. v. R.S.H.,* 412 N.E.2d 1257, 1263 (Ind.Ct.App.1980); *In re Andrews,* 454 N.W.2d at 492; *In re Wilson,* 648 A.2d at 651.

10. *See Brown,* 683 S.W.2d at 61 (preserving use of father's name protects relationship between child and father and father's family); *Plass,* 381 S.W.2d at 582 (name change denied to preserve parental relationship between father and child); *see also In re Andrews,* 454 N.W.2d at 492–93.

11. *In re Newcomb,* 15 Ohio App.3d 107, 15 OBR 198, 472 N.E.2d 1142, 1145 (1984).

12. *See Bennett,* 544 S.W.2d at 708 (child's preference a factor to be considered but not controlling); *Brown,* 683 S.W.2d at 63; *see also In re Andrews,* 454 N.W.2d at 492.

13. *In re Wilson,* 648 A.2d at 651.

she would not change her name if she married or remarried;[14] and

whether the parent seeking the change is motivated by an attempt to alienate the child from the other parent.[15]

Thus, the determination of the child's best interest in a name change is fact specific. *See Newman*, 433 S.W.2d at 424 (court considers facts and circumstances of case in deciding best interest of child).

Here, the evidence showed that "Guthrie" was the name of the mother's former husband. After her divorce, she kept the name Guthrie. At the time of the suit, she had used that name for ten years. She planned to keep the surname Guthrie in her anticipated marriage to Mr. Hardy. If she and her future husband had children, they were discussing a hyphenated name such as Guthrie Hardy for a family unit name. The mother planned to keep the name Guthrie to have the same name as Brian for associations with doctors, teachers, caregivers, friends, and church members.

Buckley gave his reason for wanting to change the child's name as:

I think a child has a right to know where he came from and to have a tie to family and to know where he is—where he's from. I think that's just a birthright. You have a heritage and it shouldn't be taken away from you. I think he has the right to know he's got a family who he has been, in essence, kept from, that very much loves him, very much supports him, very much wants him part of the family. And I think he has a right to that, to know that he comes from a specific family, from specific lines and has a heritage and history.

He emphasized the tie to family and heritage and the fact that the child had no tie of family or heritage to the name Guthrie. He thought there could be confusion about the child's parentage and there would be a tighter bond with his child if he carried the name Buckley.

In reviewing the trial court's application of the standard of best interest of the child to the factors present in this case, we note although "Guthrie" is not the mother's original surname or family name, the mother assured the court she planned to keep the name. We also note that the factor of the child having the custodial parent's name, thus avoiding inconvenience with teachers and doctors, weighs in the mother's favor. On the other hand, the factors of age and maturity, length of time the child had the surname Guthrie, the identification of the child as part of a family unit, and the positive effect on the father's bond to the child weigh in the father's favor. Because the child was less than three years old at the time of trial, the child had used the surname Guthrie for a relatively short time. There was no evidence that the child was identified by his current surname in the community. "Buckley" would help identify the child as part of the Buckley family when there was no extended family on the Guthrie side. There was testimony that having the Buckley name would lead to a stronger tie between the child, his father, and the father's family.

Thus, there was evidence of proper best interest factors favoring both the mother and the father. With evidence supporting the competing factors of the child having the mother's surname as the custodial par-

---

**14.** *See, e.g., In re Marriage of Gulsvig*, 498 N.W.2d at 729; *State ex rel. Spence–Chapin Servs. to Families & Children v. Tedeno*, 101 Misc.2d 485, 421 N.Y.S.2d 297, 300 (N.Y.Sup. Ct.1979).

**15.** *See, e.g., In re Grimes*, 530 Pa. 388, 609 A.2d 158, 161 (1992); *In re Wilson*, 648 A.2d at 651.

ent and the child having the father's surname as a connection to an extended family with the same last name, we cannot conclude the trial court abused its discretion in ordering the child's surname changed to the father's. We overrule Guthrie's first point of error.

## RETROACTIVE SUPPORT

In Guthrie's second point of error, she complains that the trial court failed to award retroactive child support from the date of filing the voluntary petition to establish parentage through the date of the trial. Buckley responds that the award of retroactive support is discretionary and that he had voluntarily paid support until he and Guthrie entered a rule 11 agreement, which suspended support during the pendency of the lawsuit. Guthrie argues that a failure to award any retroactive child support is an abuse of discretion, and in her fourth point of error, she complains of the admission of the agreement to support the trial court's decision.

Section 160.005 of the Texas Family Code provides that, upon a finding of parentage in a paternity action, the trial court may order support retroactive to the time of the birth of the child. TEX. FAM. CODE ANN. § 160.005(b) (Vernon 1996). In making an award for retroactive child support under this section, the trial court must use the child support guidelines provided by chapter 154 of the code, together with any relevant factors. *Id.* § 160.005(c); *see In re J.H.*, 961 S.W.2d 550, 552 (Tex.App.—San Antonio 1997, no writ) (applying factors listed in sections 154.123, 154.131, and 160.005 to amount of retroactive support award).

Section 154.131 of the code provides that the child support guidelines are intended to guide the court in determining the amount of retroactive child support, if any, to be ordered. TEX. FAM. CODE ANN.

§ 154.131(a) (Vernon 1996). In determining whether to order retroactive child support, the court must consider the net resources of the obligor during the relevant time period and whether:

(1) the mother had made any previous attempts to notify the biological father of his paternity or probable paternity;

(2) the biological father had knowledge of his paternity or probable paternity;

(3) the order of retroactive child support will impose an undue financial hardship on the obligor or the obligor's family; and

(4) the obligor had provided actual support or other necessaries before the filing of the action.

*Id.* § 154.131(b)(1)–(4); *see id.* § 154.123(b)(1)–(17) (Vernon 1996) (listing nonexclusive factors court may consider in applying guidelines).

The statutory language provides that the trial court has discretion in deciding whether to award retroactive child support and the amount of such an award. *Id.* §§ 154.131(a), 160.005(b); *In re J.H.*, 961 S.W.2d at 551–52. Therefore, we review the trial court's judgment under an abuse of discretion standard. *See In re Gonzalez*, 993 S.W.2d 147, 155 (Tex.App.—San Antonio 1999, no pet.); *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 577–78 (Tex. App.—Houston [1st Dist.] 1997, pet. denied), *cert. denied*, 525 U.S. 1142, 119 S.Ct. 1034, 143 L.Ed.2d 42 (1999); *Cohen v. Sims*, 830 S.W.2d 285, 288 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Aguilar v. Barker*, 699 S.W.2d 915, 918 (Tex.App.—Houston [1st Dist.] 1985, no writ). An abuse of discretion occurs when the trial court acts without reference to any guiding rules or principles. *Downer*, 701 S.W.2d at 241–42; *In re S.E.W.*, 960 S.W.2d 954, 956 (Tex.App.—Texarkana 1998, no pet.); *In re G.J.S.*, 940 S.W.2d

289, 293 (Tex.App.—San Antonio 1997, no writ).

In this case, the evidence before the court included the fact that, without court order, Buckley had paid support in the amount of $681 per month from the birth of the child to the entering of an agreement between Buckley and Guthrie. Attorneys for the parties entered an agreement that purported to be a rule 11 agreement, which provided that Buckley had no requirement to pay child support payments during the pendency of the parentage suit. The evidence showed that the parties entered this agreement because Buckley would pay travel expenses from California to Texas for visitation. Buckley further testified it would be a hardship to pay retroactive support in addition to the agreed guideline support amount of $1,064 per month. No evidence was presented of any particular expenses incurred for the care or needs of the child.

First, Guthrie complains that this agreement cannot be used to support an award of no retroactive child support for the period of the agreement. This agreement was introduced into evidence over Guthrie's objection that it was not a proper rule 11 agreement because it had not been previously filed with the trial court.

To qualify as a rule 11 agreement, the agreement must be (1) in writing, (2) signed, and (3) filed with the papers as part of the record. TEX. R. CIV. P. 11; *Padilla v. LaFrance,* 907 S.W.2d 454, 459–60 (Tex.1995) (discussing rationale of rule, citing *Birdwell v. Cox,* 18 Tex. 535, 537, 1857 WL 5000 (1857)); *Hitzelberger v. Samedan Oil Corp.,* 948 S.W.2d 497, 510 (Tex.App.—Waco 1997, writ denied). The purpose of this rule is to avoid misunderstandings and controversies that often flow from verbal agreements. *Padilla,* 907 S.W.2d at 460 (citing *Birdwell,* 18 Tex. at 537); *Kosowska v. Khan,* 929 S.W.2d 505,

507 (Tex.App.—San Antonio 1996, writ denied). The agreement in this case was in writing and was signed, but it was not filed until it was presented at trial. The Texas Supreme Court has stated:

> Although Rule 11 requires the writing to be filed in the court record, it does not say *when* it must be filed.... The purpose of the filing requirement ... is to put the agreement before the court so that "the court can judge of [its] import, and proceed to act upon [it] with safety."

*Padilla,* 907 S.W.2d at 461 (quoting *Birdwell,* 18 Tex. at 537). The supreme court held that the purpose of rule 11 "is satisfied so long as the agreement is filed before it is sought to be enforced." *Padilla,* 907 S.W.2d at 461.

Although the rule 11 agreement in this case was not filed until presented at trial, it was filed before the trial court rendered its judgment and before the judgment became final. Rule 11 provides that agreements pursuant to that rule may be enforced as to "any suit pending." TEX. R. CIV. P. 11. A suit or action remains pending in the court until all issues have been determined, final judgment has been rendered, and all postjudgment motions have been disposed of. *Thomas v. Oldham,* 895 S.W.2d 352, 356 (Tex.1995); *In re Marriage of Raffaelli,* 975 S.W.2d 660, 661 (Tex.App.—Texarkana 1998, pet. denied) (per curiam); *St. Paul Surplus Lines Ins. Co. v. Dal–Worth Tank Co.,* 917 S.W.2d 29, 43 (Tex.App.—Amarillo 1995), *aff'd in part & rev'd in part on other grounds,* 974 S.W.2d 51 (Tex.1998) (per curiam) (op. on reh'g). Thus, Guthrie's objection to the introduction of the agreement during trial was properly overruled. Buckley did not request that the agreement be enforced but that it be considered by the court when deciding the retroactive support issue. Because the rule 11 agree-

ment did not modify any court-ordered support, we conclude that the agreement and the circumstances surrounding it could be considered by the trial court as factors in deciding whether to order retroactive support. *See* TEX. FAM. CODE ANN. § 154.124(b), (d) (Vernon 1996) (trial court determines whether child support agreement is in best interest of child); *In re McLemore*, 515 S.W.2d 356, 357 (Tex.Civ. App.—Dallas 1974, orig. proceeding) (parents cannot modify child support order without approval of court). We overrule Guthrie's fourth point of error.

 Additionally, Guthrie argues that because the amount Buckley voluntarily paid did not meet the Texas guidelines, it was an abuse of discretion not to award retroactive support for the difference in the guidelines and the amount actually paid. Nevertheless, the trial court had the discretion whether to award retroactive support based on the statutory factors. *See* TEX. FAM. CODE ANN. §§ 154.123(b)(1)–(17), 154.131(b)(1)–(4),160.005(c). Here, the court could consider Buckley's voluntary payments of child support prior to filing suit until the execution of the suspension agreement. *See id.* § 154.131(b)(4). Moreover, there was evidence that a retroactive order of child support would impose an undue financial hardship on Buckley because of his financial circumstances and payment of travel expenses related to visitation while this suit was pending. *See id.* §§ 154.123(b)(14), 154.131(b)(3). Because the evidence supports the statutory factors a court may consider in determining retroactive support, we conclude the trial court acted in reference to guiding rules and principles in denying retroactive support. Thus, the trial court did not abuse its discretion. Accordingly, we overrule Guthrie's second point of error.

**CONCLUSION**

Having overruled Guthrie's four points of error, we affirm the trial court's judgment.