COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| | § | No. 08-18-00202-CV |
| IN THE INTEREST OF | § | Appeal from the |
| I.D.Z., | § | 383rd District Court |
| A CHILD | § | of El Paso County, Texas |
| | § | (TC#2016DCM8659) |

## O P I N I O N

J.A.R., Jr. ("Father") and V.R. ("Mother") are the parents of I.D.Z., a minor child (the "child"), who Mother named before Father's paternity was established. After Father's paternity was established, the trial court granted his request to change the child's name to J.A.R., III. Mother does not challenge the trial court's decision to change the child's surname to Father's surname, but contends that Father did not meet his burden of demonstrating that it was in the child's best interest, or that good cause existed to change his first and middle names.[1] Because we agree that Father did not meet his burden, we reverse the trial court's order changing the child's name. We decline to affirm the part of the order changing the child's surname. Children are not

---

[1] This case was submitted solely on Mother's brief since Father failed to file a responsive brief.

named in a piecemeal fashion. And because Mother made her own request for a change of the child's first name, we remand the matter to the trial court to consider that request in light of our opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mother, who was in a dating relationship with Father, advised him in October of 2015, that she was pregnant with his child. When Father asked Mother to consider getting an abortion, Mother broke up with Father, and falsely told him that the child was not his. Mother then rekindled a relationship with an ex-boyfriend (I.Z.), who informed her that he wished to marry Mother and raise a family with her. When the child was born in May of 2016, Mother named the child after I.Z., giving the child his first and last name. However, she chose the middle name of "Damian" for the child and has consistently called the child by his middle name since the time of his birth. Shortly after the child's birth, Mother broke up with I.Z., and in 2016, Mother contacted Father to inform him that he was the biological father, a fact subsequently confirmed by DNA testing. At first, Mother allowed Father to visit with the child, but upon advice of counsel, she terminated Father's access to the child shortly after he filed a petition seeking (1) to establish paternity, (2) appointment as the managing conservator of the child, and (3) to change the child's name. Specifically, Father requested that the child's name be changed to J.A.R., III., but cited no reasons for the request. Mother filed a counterpetition, asking to be appointed as the sole managing conservator, and seeking child support. Mother did not address the issue of the child's name in her counterpetition.

The parties subsequently entered into an agreement in which Father acknowledged paternity, and the parties agreed to be appointed joint managing conservators, with Mother having the exclusive right to designate the child's residence. In addition, the parties agreed to a visitation

schedule for Father, and agreed upon the amount of Father's child support obligation. However, the parties did not agree on the issue of the child's name change.

## A. The Associate Judge's Proposed Order

Upon referral from the trial court, an associate judge heard the parties' petitions.[2] At the hearing, the associate judge accepted the parties' agreement with regard to paternity, conservatorship, and child support issues, noting that the only issue to be decided was whether to change the child's name.

Father testified at the hearing that he wanted the child's name changed to J.A.R., III, as he wished to have the family name "carry on," adding that he had always wanted to have a "namesake." Mother, on the other hand, requested that the child's first name be changed to his current middle name, "Damian," and that his last name be changed to her surname. In support of her request, Mother testified that the child, who was 19 months old at the time of the hearing, had always been called "Damian," and that the child responded to that name. She further expressed her belief that the child should not bear the Father's surname, given Father's lack of interest in her pregnancy and his failure to give her adequate financial support after the child's birth.[3]

The associate judge split the proverbial baby, and issued a proposed order, which would have changed the child's first name to "Damian," as Mother requested, but would have given the child the Father's surname, thereby proposing the name, D.R. Both parties were dissatisfied with this ruling. Father filed a "Motion for De Novo Hearing," requesting that the trial court reconsider

---

[2] Section 201.005 of the Texas Family Code provides that a trial court may refer to an associate judge "any aspect of a suit over which the court has jurisdiction under this title, Title 1, Chapter 45, or Title 4, including any matter ancillary to the suit." TEX.FAM.CODE ANN. § 201.005(a).

[3] Mother acknowledged that Father and his family provided her with some diapers and clothes for the child after she told him that he was the biological father. Father, on the other hand, explained that he was not in a position to give Mother any financial support for the child when he first learned that the child was his, as he was in school and living with his parents at that time. He did, however, indicate that he had since obtained employment and was willing to pay Mother child support.

the issue of the child's name change, again contending that the child's name should be changed to J.A.R., III.   Mother filed a response to the motion, opposing Father's name-change request, and reiterating her request that the child be named "Damian," but with her surname.

## B.   The Trial Court Hearing

The trial court thereafter held a de novo hearing at which Father testified that he wished to have the child's name changed to J.A.R., III, so that the child would share his own father's name. Mother continued to oppose Father's request, again expressing her belief that Father did not have the right to name the child given his initial lack of interest in the child, and his failure to provide her with adequate financial assistance.   And once again, Mother reiterated her request that the child's first name be changed to "Damian," and that his last name be changed to her surname.

At the close of the hearing, the trial court ordered the child's name changed to J.A.R., III.[4] Although the trial court did not state its reasons for the name change, the court advised Mother that she could file a motion to modify the child's name in a year if Father did not, as Mother alleged, show "interest in the child" during that time.

Mother thereafter filed a motion to reconsider, arguing that Father did not present any evidence to support a finding that it was in the child's best interest to change the child's first and middle names, or that there was good cause for the change.   However, Mother did not complain about the change of the child's surname, and requested that the trial court use the name, D.R., as proposed by the associate judge.   The trial court denied Mother's motion and this appeal follows.[5]

---

[4] The trial court's order also affirmed the associate judge's findings on paternity, conservatorship and visitation, but reduced Father's monthly child support obligation, as requested by Father.   None of these issues are at issue in this appeal.

[5] Mother requested that the trial court issue findings of fact and conclusions of law in support of its name-change decision.   But when the trial court failed to respond, Mother did not file a notice of past due findings, which waives any challenge based on the failure to file findings.   *See Ad Villarai, LLC v. Chan II Pak*, 519 S.W.3d 132, 137 (Tex. 2017) ("We have held that a party waives its right to challenge a failure to file findings if it does not file a notice of past due findings as rule 297 requires.").

## II. DISCUSSION

In her sole issue on appeal, Mother contends that the trial court abused its discretion by changing the child's first and middle names, without any evidence that the name change was in the child's best interest or that there was good cause for the name change. Mother further contends that upon reversing the trial court's order, we should "reinstate" the associate judge's decision, and thereby find that the child's legal name is D.R. Although we agree with Mother that the trial court abused its discretion in changing the child's first and middle names, we conclude that there is no legal basis for "reinstating" the associate judge's decision.

### A. Standard of Review

We review a trial court's ruling on a request to change the name of a child for an abuse of discretion. *In Interest of C.M.V.*, 479 S.W.3d 352, 358 (Tex.App.--El Paso 2015, no pet.). A trial court abuses its discretion by ruling (1) arbitrarily, unreasonably, or without regard to guiding legal principles, or (2) without supporting evidence. *Id.*, *citing Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012). To determine whether the trial court has abused its discretion, we engage in a two-pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *In Interest of C.M.V.*, 479 S.W.3d at 358, *citing In re T.M.P.*, 417 S.W.3d 557, 562 (Tex.App.--El Paso 2013, no pet.). The operative inquiry in the first question is the sufficiency of the evidence. *Id.* We must then decide whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.*

In determining whether the trial court had sufficient information from which to make its decision, we keep in mind that the trial court was entitled to consider both the evidence presented at the de novo hearing, as well as the evidence that was presented to the associate judge. *See*

*Interest of A.L.M.-F.*, 593 S.W.3d 271, 276-77 (Tex. 2019) (recognizing that unlike a trial de novo, which is an entirely new and independent proceeding, when a referring court holds a de novo hearing under the Family Code, the trial court may consider the record presented to the associate judge in making its ruling). We therefore consider the records from both hearings in conducting our review.

## B. Relevant Law

A father does not have a constitutional right to have his name borne by his child. *See In Interest of C.M.V.*, 479 S.W.3d at 358, *citing Newman v. King*, 433 S.W.2d 420, 424 (Tex. 1968); *In re Guthrie,* 45 S.W.3d 719, 723 (Tex.App.--Dallas 2001, pet. denied); *Concha v. Concha*, 808 S.W.2d 230, 232 (Tex.App.--El Paso 1991, no writ). Further, as parents must be treated equally under both the Family Code and the Constitution, it is generally recognized that a father has no greater right to have a child bear his surname than does the mother. *See Newman*, 433 S.W.2d at 423 (because Texas law recognizes equality between parents, any argument "that the child of unmarried persons should bear the surname of the father because of custom is another way of permitting illegal inequality."); *see also In re Guthrie*, 45 S.W.3d at 724 (recognizing that any customs or traditions that favor giving a child the father's name reflect a "constitutionally prohibited inequality," and therefore must not be considered in determining whether to change a child's name).

Nevertheless, the Texas Family Code allows a father to move for a change of a child's name upon a finding of paternity, and the trial court may grant the motion for "good cause shown." *See* TEX.FAM.CODE ANN. § 160.636(e) (providing that when entering an order adjudicating paternity, on the "request of a party and for good cause shown, the court may order that the name of the child be changed."). In addition, Section 45.004 of the Family Code provides that a trial

7

court may change the name of a child if it is in the child's "best interest." TEX.FAM.CODE ANN. § 45.004(a)(l) (the court may order the name of a child changed if "the change is in the best interest of the child."). Some courts view the concepts of "good cause" and "best interest" as intertwined and have held that once a finding is made that a name change is in a child's best interest, this necessarily implies the existence of good cause. *In Interest of C.M.V.*, 479 S.W.3d at 358, *citing In re H.S.B.*, 401 S.W.3d 77, 81 n.2 (Tex.App.--Houston [14th Dist.] 2011, no pet.); *see also Anderson v. Dainard*, 478 S.W.3d 147, 151 n.1 (Tex.App.--Houston [1st Dist.] 2015, no pet.). However, we have sided with those courts that view the concepts of "best interest" and "good cause" as separate and distinct, and we have held that a party requesting a child's name change must therefore establish the existence of both in order to support the request. *See In Interest of C.M.V.*, 479 S.W.3d at 358-359, *citing In re S.M.V.*, 287 S.W.3d 435, 445 (Tex.App.--Dallas 2009, no pet.); *In re M.C.F.*, 121 S.W.3d 891, 894-95 (Tex.App.--Fort Worth 2003, no pet.). In addition, we recognize that although the Family Code gives trial courts the discretion to change a child's name, courts should exercise that discretion "reluctantly and only where the substantial welfare of the child requires the change." *See Newman*, 433 S.W.2d at 423; *see also In re Guthrie*, 45 S.W.3d at 723.

## C. Application

### 1. *No evidence best interest of the child or good cause*

We start with a best interest analysis. In general, the burden is on the party moving for a child's name change to establish that the change is in the child's best interest. *C.M.V., 479 S.W.3d at 358-59, citing In re H.S.B.*, 401 S.W.3d at 83-84; *see also Newman*, 433 S.W.2d at 424 (recognizing that "best interest" of child is the primary consideration in determining whether to grant a name change). Six nonexclusive factors are relevant in the majority of cases for

determining whether a change to a child's surname is in a child's best interest:

> (1) the name that would best avoid anxiety, embarrassment, inconvenience, confusion, or disruption for the child, which may include consideration of parental misconduct and the degree of community respect (or disrespect) associated with the name;

> (2) the name that would best help the child's associational identity within a family unit, which may include whether a change in name would positively or negatively affect the bond between the child and either parent or the parents' families;

> (3) assurances by the parent whose surname the child will bear that the parent will not change his or her surname at a later time;

> (4) the length of time the child has used one surname and the level of identity the child has with the surname;

> (5) the child's preference, along with the age and maturity of the child; and

> (6) whether either parent is motivated by concerns other than the child's best interest—for example, an attempt to alienate the child from the other parent.

*In Interest of C.M.V.*, 479 S.W.3d at 358, *citing In re H.S.B.*, 401 S.W.3d at 84; *see also In Interest of J.N.L.*, 528 S.W.3d 237, 240-41 (Tex.App.--Houston [14th Dist.] 2017, no pet.) (utilizing same factors).   Although these factors are typically applied to cases in which a trial court has changed a child's surname, we conclude that at least three of the factors are relevant to our determination of whether the trial court's decision to change the child's given name was in his best interest.[6]

First, we find no evidence in either record to support a finding that changing the child's given name, in the manner requested by Father, would help the child avoid anxiety, embarrassment, or confusion.   To the contrary, changing the child's given name would more than likely be confusing and disruptive to the child, as the undisputed evidence demonstrated that the child had been called by his given middle name, "Damian," throughout the two years of his life,

---

[6] We note that the remaining three factors are not relevant to our analysis.   In particular, we note that the child was too young to express his preference, and Father was never asked to give assurances that he would not try to change the child's name at a later date.   In addition, we see no evidence in the record that either parent had any improper motives for seeking the name change.

that the child recognized and responded to that name, and therefore, in effect "identified" with the name. *See Newman*, 433 S.W.2d at 423 (recognizing the confusing and disruptive nature of requiring a child to be called by a different name than the one he had been called "practically all of his life.").

Moreover, Father was given his wish to have the child's last name changed to his surname, which, at least in theory, will serve the purpose of strengthening the child's bond with Father's family. However, there is nothing in the record to suggest that the child's bond with Father's family would be further strengthened by changing the child's given names, or that the child would otherwise derive any benefit from the change. *See, e.g.*, *In Interest of M.L.P.*, 621 S.W.2d 430, 430-31 (Tex.App.--San Antonio 1981, writ dism'd) (trial court properly denied father's request to change child's given names, which mother had selected, where child already bore father's surname and father presented no evidence that a change in child's given name would have been beneficial to the child or that there was good cause for the change).

Instead, as set forth above, Father provided only one reason for changing the child's given name, which centered solely on his personal desire to carry on his family's namesake. It is well-established, however, that a parent's personal wish to have a child's name changed does not, standing alone, serve to establish that the change is in the child's best interest. *See In Interest of C.M.V.*, 479 S.W.3d at 358-59 (court must keep in mind that what a parent wishes to have his child's name changed to is secondary to what is in the child's best interest); *see also Anderson*, 478 S.W.3d at 151 (recognizing that the child's best interest is the determinative issue, and that the "interests of the parents are irrelevant"). Further, we note that Father made no attempt to link his wish to carry on the family's namesake with any of the factors relevant to the child's best interest. *See In re H.S.B.*, 401 S.W.3d at 86 (finding that name change was not in child's best interest where

10

father cited "tradition" as the reason for the change, but made no attempt to link "tradition" with any factors relevant to the child's best interest); *see also In re Guthrie*, 45 S.W.3d at 724 (recognizing that "tradition," standing alone, cannot justify changing a child's name).

We therefore conclude that there was nothing in the record to support a finding that changing the child's given names was in the child's best interest. And, as the record does not support a finding that the name change was in the child's best interest, we need not address the issue of whether there was sufficient evidence to support a finding of "good cause" for the name change. *In Interest of C.M.V.*, 479 S.W.3d at 358-59 (finding it unnecessary to address the issue of good cause where the evidence failed to demonstrate that a name change was in child's best interest). Accordingly, we hold that the trial court abused its discretion by changing the child's given names.

### 2. *A remand is necessary in the interest of justice*

Although we agree with Mother that the trial court abused its discretion by changing the child's given names, we disagree with Mother's assertion that we may simply "reinstate" the associate judge's decision to name the child D.R. upon our reversal of the trial court's judgment. Mother's argument overlooks the unique role that an associate judge plays in our family law system. Except in limited circumstances not relevant here, an associate judge has no authority to enter a final order. Rather, an associate judge only has the authority to draft a proposed order to be submitted to the referring court for approval. *See* TEX.FAM.CODE ANN. § 201.007(a)(8-10) (upon holding a hearing, an associate judge may, among other things, "make findings of fact on evidence," "formulate conclusions of law," and "recommend an order to be rendered in a case."); *see also Graham v. Graham*, 414 S.W.3d 800, 801 (Tex.App.--Houston [1st Dist.] 2013, no pet.) ("Associate judges do not have the power to render final judgment outside the context of certain

11

limited exceptions"). If the parties do not file a request for a de novo hearing, the referring court may adopt the proposed order in full or may otherwise modify or reject the order. However, the associate judge's proposed order does not become final unless it is approved and signed by the trial court. *See* TEX.FAM.CODE ANN. §§ 201.014, 201.013(b); s*ee also In re Lausch*, 177 S.W.3d 144, 151 (Tex.App.--Houston [1st Dist.] 2005, orig. proceeding) (holding that associate judge's report was not final because it required approval of trial court and "contemplate[d] an order to follow").

On the other hand, where one or both of the parties is dissatisfied with the associate judge's proposed order, the parties may file a request for a de novo hearing to be held by the referring court, specifying the issues that they wish to have the referring court consider. *See* TEX.FAM.CODE ANN. § 201.015(a), (b), (e). In that instance, the associate judge's order is "in full force and effect and is enforceable as an order or judgment of the referring court" pending the referring court's holding of the de novo hearing TEX.FAM.CODE ANN. § 201.013(a). However, in light of this statutory scheme, we conclude that once a referring court conducts a de novo hearing and issues its final order, the associate judge's proposed order--which was never a final order to begin with--no longer has any existence or effect. Accordingly, upon reversing a referring court's final order, an appellate court may not simply "reinstate" the associate judge's proposed order. Where then does this leave us?

As set forth above, Mother does not contest the trial court's decision to change the child's last name to the Father's surname. We are reluctant, however, to simply affirm that portion of the trial court's judgment because we do not name children in a piecemeal fashion. It may be that Mother has judicially admitted that using the Father's surname meets the applicable test. But even at that, suitable given names should be determined by one single order, from one single court.

12

That is not to say that the child's current given names must be changed, or that Damian would not be the best given name.   That is not for this Court to decide.   We have the authority to remand a case in the interests of justice.   *See generally* TEX.R.APP.P. 43.3(a), (b) (appellate court must "render the judgment that the trial court should have rendered, except when: (a) a remand is necessary for further proceedings; or (b) the interests of justice require a remand for another trial.").   Here, we exercise our discretion to do so, and remand this matter to the trial court to hold further proceedings to determine whether the child's surname should be changed, whether it is in the child's best interest to either retain his given names, or alternatively, whether Mother's request to change the child's given name to "Damian" is in the child's best interest and, if so, whether good cause exists for such a change.

Mother's Issue One is sustained in part and overruled in part.   We reverse the trial court's judgment but remand this matter to the trial court for further proceedings in accordance with our opinion.

JEFF ALLEY, Chief Justice

April 30, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.