02-10-376-CV












 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00376-CV

 

 


 
 
 In the Interest of A.W.G.,
 A Child
 
 
  
 
 
  
 
 


 

 

----------

 

FROM THE 16th District Court OF Denton COUNTY

----------

 

MEMORANDUM OPINION[1]

 

----------

 

I. Introduction

          Appellant L.A.G. (Mother) appeals from the trial court’s
order granting a name change of her minor son, A.W.G.,
and awarding her $6,340 in retroactive child support.  In two issues,
Mother argues that the trial court abused its discretion by granting the name
change and by improperly calculating the amount of retroactive child
support.  We will affirm.

II. Factual
and Procedural Background

          Mother gave
birth to A.W.G. in September 2007.  Appellee A.W.E. (Father), Mother’s fiancé at the time, was present
at the hospital, and he signed an acknowledgment of paternity.  The form
was complete when Father signed it, and although the form already specified A.W.G.’s name, no one asked Father if he wanted
to write A.W.G.’s name on the form, nor did Father
understand that he had that option.  Father and Mother never agreed that A.W.G. would have Mother’s surname, but while Mother was
pregnant, the couple agreed to change the child’s name
to Father’s surname when they married.

          Father
broke off the couple’s engagement after A.W.G.’s
birth, but the two continued to date until Father ended the relationship in
March 2009.  In July 2009, Mother and Father entered into a Rule 11
agreement that obligated Father to pay Mother $530.62 per month in child
support.  The agreement also provided Father with visitation rights.

          Before
entering into the Rule 11 agreement, Mother limited Father’s access to the
child.[2]  Nonetheless, Father significantly contributed to A.W.G.’s financial needs (over $2,000) but generally only
saw him when he took him shopping with Mother.  Out of his concern for A.W.G.’s safety, Father loaned Mother a four-door sedan so
that Mother would not have to transport A.W.G. (along
with Mother’s other child) in her single-cab pickup truck.  In addition to
making car and insurance payments, Father gave Mother access to his bank
account for six months so that she could purchase things for A.W.G. or for herself on behalf of the child.

          In March
2009, Father petitioned the trial court to adjudicate parentage.  In his
petition, Father requested that the trial court establish his relationship with
A.W.G and change A.W.G’s
surname to match his surname.  In August 2010, following a bench trial in
July, the trial court signed an order adjudicating parentage, which established
the parent-child relationship between Father and A.W.G.
and ordered that A.W.G’s surname be changed. 
The trial court also ordered Father to pay Mother $6,340 in retroactive child
support.[3]

          Mother
timely requested findings of fact and conclusions of law.  The trial court
did not timely file its findings of fact and conclusions of law, but Mother did
not file her notice of past-due findings within thirty days of her original
request, nor does she argue on appeal that the trial court erred by not
entering findings of fact and conclusions of law.  See Tex. R. Civ.
P. 297.  Mother moved for a new trial, but her motion was denied.

III.  Name
Change

         
In her first issue, Mother argues that the trial court abused its
discretion by granting father’s request to change A.W.G.’s
name.  She contends that “there was no evidence upon which the Court could
rely to exercise [its] discretion.”

         
A.      Standard of
Review

         
We review a trial court’s decision to change a child’s name under
an abuse of discretion standard.  In re M.C.F.,
121 S.W.3d 891, 895 (Tex. App.—Fort Worth 2003, no
pet.); In re Guthrie, 45 S.W.3d 719, 723
(Tex. App.—Dallas 2001, pet. denied).  A trial court abuses its discretion
when it acts arbitrarily or unreasonably or without reference to any guiding
rules or principles.  See Low v. Henry, 221 S.W.3d 609, 614 (Tex. 2007); Cire
v. Cummings, 134 S.W.3d 835, 838–39 (Tex.
2004).  An abuse
of discretion does not occur when the trial court bases its decisions on
conflicting evidence.  In re Barber, 982 S.W.2d 364, 366
(Tex. 1998) (orig. proceeding).

          When a
trial court does not issue findings of fact and conclusions of law, as in this
case, all facts necessary to support the judgment and supported by the evidence
are implied.  See
BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002); Worford v.
Stamper, 801 S.W.2d 108, 109
(Tex. 1990).  When the record includes the reporter’s and clerk’s
records, these implied findings are not conclusive and may be challenged for
legal and factual sufficiency.  BMC, 83 S.W.3d
at 795 (citing Roberson v.
Robinson, 768 S.W.2d 280, 281
(Tex. 1989)).  A legal sufficiency challenge is a relevant factor for our
review, not an independent ground for reversal.[4]  Boyd, 131 S.W.3d at 611; M.C.F., 121
S.W.3d at 895; see Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226
(Tex. 1991).  We may sustain a legal sufficiency challenge
only when (1) the record discloses a complete absence of evidence of a
vital fact; (2) the court is barred by rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact; (3) the
evidence offered to prove a vital fact is no more than a mere scintilla; or
(4) the evidence establishes conclusively the opposite of a vital
fact.  Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S.
1040 (1999); Robert W. Calvert, “No Evidence” and “Insufficient Evidence”
Points of Error, 38 Tex. L. Rev. 361, 362–63 (1960).  In determining
whether there is legally sufficient evidence to support the finding under
review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the
finding unless a reasonable factfinder could
not.  Cent. Ready Mix
Concrete Co. v. Islas, 228 S.W.3d
649, 651 (Tex. 2007); City of Keller v. Wilson, 168 S.W.3d 802, 807, 827 (Tex. 2005).

         
B.      Good Cause and
Best Interest

          When a
trial court renders an order adjudicating parentage, it may order that the
child’s name be changed “[o]n request of a party and for good cause shown” and
if the court determines that the name change is “in the child’s best
interest.”  See Tex. Fam. Code Ann. § 160.636(e) (West 2008); M.C.F., 121 S.W.3d at 894–95;
see also Tex. Fam. Code Ann. § 153.002 (West 2008) (providing that
best interest of the child is always a factor in any suit affecting the
parent-child relationship).

         
Family code section 160.636(e) does not define good cause. 
In M.C.F., this court looked to the meaning of
good cause in Black’s Law Dictionary, which defines good cause as a “legally
sufficient reason” and states that it “is often the burden placed upon a litigant . . . to show why a request should be
granted or an action excused.”  121 S.W.3d
at 896; Black’s Law Dictionary 251 (9th ed. 2009).

          This court
and some of our sister courts have identified a nonexclusive list of factors to
consider in determining whether the name change is in the best interest of the
child, including:

·        whether the changed name or the original name would
best avoid embarrassment, inconvenience, or confusion for the custodial parent;

 

·        whether the changed name or original name would best
help identify the child with the family unit;

 

·        the length of time that the child has carried the original name;

 

·        the degree of community respect associated with the original and
changed names;

 

·        whether the change will positively or adversely
affect the bond between the child and either parent or the parents’ families;

 

·        the preference, maturity, and age of the child;

 

·        parental misconduct, such as support or nonsupport or
maintaining or failing to maintain contact with the child;

 

·        any delay in requesting or objecting to the name change;

 

·        whether the parent seeking the name change is
motivated by an attempt to alienate the child from the other parent; and

 

·        assurances by the parent whose surname the child will
bear that the parent will not change his or her surname at a later time.

 

See In re S.M.V., 287 S.W.3d 435, 449–50 (Tex.
App.—Dallas 2009, no pet.); M.C.F., 121 S.W.3d at 897–98; Guthrie, 45 S.W.3d
at 725–26; see also In re A.E.M.S.,
No. 09-07-00410-CV, 2008 WL 4509054, at *4–5 (Tex. App.—Beaumont Oct. 9, 2008,
no pet.) (mem. op.); compare Scoggins
v. Trevino, 200 S.W.3d 832, 837 (Tex. App.—Corpus
Christi 2006, no pet.) (addressing twelve factors and
determining their neutrality and applicability to specific facts) with
In re H.S.B., No. 14-10-00659-CV, 2011 WL
1005559, at *4 (Tex. App.—Houston [14th Dist.] Mar. 1, 2011,
no pet.) (synthesizing factors and abandoning
factors not deemed in the child’s best interest).  Thus, the determination
of the child’s best interest in a name change is fact specific.  S.M.V., 287 S.W.3d at 450
(citing Guthrie, 45 S.W.3d at 726). 
Generally, courts reluctantly exercise the power to change a child’s name and
do so only when the substantial welfare of the child requires it.  M.C.F., 121 S.W.3d
at 897.

          The record
demonstrates that Mother and Father never married but that Father proposed to
Mother in May 2007 before A.W.G. was born in
September 2007.  Mother testified that she and Father had agreed during
her pregnancy that A.W.G. would have Mother’s surname
unless the couple got married.  Father denied making such an agreement but
did acknowledge that A.W.G.’s name would be changed to
Father’s surname when the couple married.  Father testified that he did
not know that he had a choice to insist that A.W.G.
use Father’s surname when he signed the paternity acknowledgment form.
 Mother stated that she filled in A.W.G.’s name
on the birth certificate and that Father was in the room when she did so.

          At the time
of the trial, A.W.G. was less than three years
old.  Father testified that A.W.G. should have
his surname because children traditionally have their father’s last name and
because Father has an established family heritage with many males in the family
bearing initials similar to A.W.G., if A.W.G. had Father’s surname.  Father stated that A.W.G.’s initials would resemble Father’s grandfather’s
name, his father’s name, his brother’s name, and his nephew’s name.
 Father testified that his family has access to and is familiar with A.W.G. and that he plans to continue his active
participation in A.W.G.’s life.  The order
adjudicating parentage appointed Father joint managing conservator and provides
him with additional possession of A.W.G. when he
turns three years old.

          Father
testified to the convenience of the name change by stating that A.W.G. has only one regular doctor and no educational or
daycare records.  Thus, only one medical record and A.W.G.’s
Social Security number would need to be updated in the event of a name
change.  Father even offered to perform the necessary paperwork to
implement the changes.  Father has voluntarily financially contributed to A.W.G. since his birth and has not missed a single payment
since he entered into the Rule 11 agreement with Mother.  Mother agreed
that Father probably voluntarily paid at least $2,436.49 for A.W.G.’s benefit before entering into the Rule 11
agreement.

          Father
stated that based on A.W.G.’s age, no negative
consequences would result if his name were changed.  Mother testified that
she lives with her sister in a house that contains multiple children with
different last names.  Father, on the other hand, stated that he has no
other children and is not expecting to have any other children.

         
Mother testified that A.W.G. should keep
Mother’s last name because A.W.G. lives with Mother
and because she will be attending his school functions.  No evidence suggests
that Father will not also be attending A.W.G.’s
school functions, but the evidence does indicate that Father’s involvement in A.W.G.’s life will increase.

          The record
indicates that Father waited eighteen to nineteen months to request that A.W.G.’s name be changed; Mother testified that “[Father]
had every opportunity, [but] he waited.”  However, Mother also stated that
she assumed Father did not immediately petition for a name change after A.W.G. was born because she and Father were still dating. 
Mother said that Father did not break up with her until March 2009, and
Father testified that he did not talk seriously to Mother about a name change
prior to March 2009.  Mother testified that she would not change her name
if she ever remarried.

         
Accordingly, the record contains some evidence that good cause exists to change
A.W.G.’s name and that the name change is in A.W.G.’s best interest.  Because there is some
evidence of good cause and best interest, we must hold that the trial court did
not abuse its discretion by granting the name change.  See M.C.F., 121 S.W.3d
at 895.  We overrule Mother’s first issue.

IV.  Retroactive Child Support

          In her
second issue, Mother argues that the trial court abused its discretion by
awarding her retroactive child support of only $6,340.  She contends that
the award is not supported by the family code’s child support guidelines and
that “[t]here is no evidence to support the subsumed finding that [Father] was
making net resources of $905.00 per month” during the relevant time period for
calculating retroactive child support.

          We
review a trial court’s order for child support,
including an award for retroactive support, for an abuse of discretion.  See
Worford, 801 S.W.2d
at 109; In re J.M.C., No. 02-09-00292-CV,
2010 WL 2889671, at *2 (Tex. App.—Fort Worth July 22, 2010, no pet.) (mem. op.); Guthrie, 45 S.W.3d at 727.  Accordingly, we will not
reverse a trial court’s decision absent an abuse of discretion.  See
Guthrie, 45 S.W.3d at 727.

          A “court may order retroactive child support,” and if it
does so, it “shall use the child support guidelines provided by Chapter 154,
together with any other relevant factors.”  Tex. Fam.
Code. Ann § 160.636(g), (h). 
However, a slight deviation from the guidelines will not constitute an abuse of
discretion.  In re Valadez,
980 S.W.2d 910, 914 (Tex. App.—Corpus Christi 1998,
no pet.).  The child support guidelines are “intended to guide
courts in determining the amount of retroactive child support
. . . to be ordered,” and they provide that a “court shall
consider the net resources of the obligor during the relevant time period,”
whether “the obligor had knowledge of his paternity,” and whether “the obligor
has provided actual support or other necessaries before the filing of the
action.”  Tex. Fam. Code Ann. § 154.131(a), (b)(2),
(b)(4) (West 2008).  Nonetheless, the obligor’s net resources may be
calculated based on imprecise information.  See In re J.C.K., 143 S.W.3d 131, 139
(Tex. App.—Waco 2004, no pet.).  The statutory language vests the trial
court with discretion to award retroactive child support and the amount of that
support.  Guthrie, 45 S.W.3d
at 727.

          Here, the
trial court based Father’s net resources during the relevant time period
(September 2007 through July 2009; twenty-one months[5]) on his net resources used
to calculate his child support obligation under the July 2009 Rule 11 agreement
with Mother.  Under the Rule 11 agreement, the parties used the child
support guidelines to figure Father’s obligation.  Although the relevant
time period in question runs prior to the Rule 11 agreement, both parties
testified that Father worked from A.W.G.’s birth in
September 2007 until entering into the Rule 11 agreement in July 2009.
 Mother did not object to any of the admitted documents pertaining to the
Rule 11 agreement’s monetary breakdown or Father’s current income.  In
fact, Mother relied on the above testimony regarding Father’s employment in
requesting that the trial judge base the retroactive support award on the
amount that Father was paying under the Rule 11 agreement (times twenty-one
months).  Notably, while making her request, Mother emphasized that the
trial court had discretion in making its decision, and she asserted that “at
least between [four and five thousand dollars] would be reasonable in this case
for retroactive child support.”  Thus, Mother is now complaining on appeal
about receiving exactly what she sought in the trial court (and quite more than
what she thought would be reasonable).

          We hold
that the trial court did not abuse its discretion in basing the retroactive
child support order on Father’s net resources at the time of the Rule 11
agreement and awarding Mother retroactive child support in the amount of
$6,340.[6]  We overrule this part of Mother’s second issue.

          Mother also
argues in her second issue that the trial court erred by not granting interest
on its order.  She contends that prejudgment interest is generally
recoverable as a matter of right.

          To preserve an
issue for appeal, a party must have presented to the trial court a timely
request, objection, or motion specifically stating the grounds for the desired
ruling.  See
Tex. R. App. P. 33.1(a)(1).  Because Mother did
not raise this complaint during trial or in a postjudgment
motion, she has not preserved the issue for
appellate review.  See In re A.A.F.,
120 S.W.3d 517, 519 (Tex. App.—Dallas 2003, no
pet.).  We overrule the remainder of Mother’s second issue.

V.  Conclusion

          Having overruled Mother’s two issues, we affirm the trial court’s
order.

 

 

 

BILL MEIER
JUSTICE

 

PANEL: 
WALKER, MCCOY, and MEIER, JJ.

 

DELIVERED:  August 25,
2011














[1]See
Tex. R. App. P. 47.4.





[2]Mother
testified that she did not allow Father to keep A.W.G.
alone because she feared that Father was incapable of handling A.W.G.’s respiratory problems.





[3]In November 2010, the trial court signed an order
adjudicating parentage nunc pro tunc.





[4]When a party raises such a challenge, we first consider
whether the trial court had sufficient evidence upon which to exercise its
discretion.  M.C.F., 121
S.W.3d at 895.  Then we ask whether the
trial court abused its discretion by acting arbitrarily and unreasonably or
without any reference to guiding rules or principles.  Id. at 895,
898; see Boyd v. Boyd, 131 S.W.3d 605, 611
(Tex. App.—Fort Worth 2004, no pet.).





[5]Mother
states in her brief that the relevant time period is thirty-five months,
running from September 2007 through July 2010. However, her statement directly
contradicts the record. 





[6]The
facts of this case are distinguishable from other cases in which the trial
court made an arbitrary inference or abused its discretion by ruling on
insufficient evidence regarding an obligor’s net resources.  See
In re J.A.J., 283 S.W.3d
495, 501 (Tex. App.—Beaumont 2009, no pet.); Flores v. Cuevas, No.
01-06-00257-CV, 2007 WL 624716, at *4 (Tex. App.—Houston [1st Dist.] Mar. 1, 2007, no pet.) (mem. op.).

Both J.A.J. and Flores
involved an obligor who appealed a trial court’s order.  Here, the obligee is appealing exactly what she asked for. 
Also, although the court in J.A.J. heard
evidence that the obligor had been employed by the same company during all
years relevant to the request for retroactive child support (2004 and 2005),
presuming that the obligor made the same amount during that time period as he
did when he worked for the same company in 2002 and 2003 did not support the
trial court’s calculation of retroactive child support.  J.A.J., 283 S.W.3d
at 500.  Here, applying the presumption that Father made the same
amount of money during the relevant time period as he made during the time
period relevant to the Rule 11 agreement does support the trial court’s
calculation of retroactive child support as requested by Mother.  Further,
in Flores, the court found that the trial court had based its award
solely on evidence from the obligor’s present earnings, without any evidence of
his earnings during any relevant time period or evidence on the other relevant
factors.  2007 WL 624718, at *4.  In
contrast, the trial court here heard evidence regarding A.W.E’s
employment and income during the relevant time period as well as evidence
regarding other relevant factors, namely, Father’s voluntary contributions
before entering the Rule 11 agreement.  Moreover, in Flores, the
court stated that because there was no evidence of the obligor’s net resources
during the relevant time period, the court should presume that the obligor had
wages or salary during the relevant time period equal to the federal minimum
wage for a forty-hour work week.  Id. at *4 (citing Tex. Fam. Code
Ann. § 154.068 (West 2008)); In re M.M., 980 S.W.2d 699, 701 (Tex. App—San Antonio 1998, no pet.) (applying minimum wage presumption to retroactive
award).  We note that applying a minimum wage presumption here would
significantly reduce Mother’s award.  Likewise, Father testified that he
was promoted between 2007 to 2009; therefore, Mother
would have received less had Father’s income been strictly based on what he
made during the relevant time period.